## THE UNITED STATES v. THE STATE BANK OF NORTH CARO-LINA.

The right of priority of payment of debts due to the government, is a prerogative of the crown of England, well known to the common law. It is founded, not so much upon any personal advantage to the sovereign, as. upon motives of public policy to secure an adequate revenue to sustain the public burthens, and discharge the public debts.

The claim of the United States to priority does not stand upon any sovereign prerogative, but is exclusively founded on the actual provisions of our own statutes. The same policy which governed in the case of the royal prerogative may be clearly traced in their statutes; and as that policy has mainly a reference to the public good, there is no reason for giving to them a strait and narrow interpretation. Like all other statutes of this nature, they ought to receive a fair and reasonable interpretation, according to the just import of their terms.

The priority of payment out of the estates of insolvents in favour of the United States, was, under the statutes of the United States, first applied to bonds for the payment of duties, and to persons engaged in commerce.

The term " due" as applied to debts, is sometimes used to express the mere state of indebtment, and then it is equivalent to " owed" or " owing." And it is sometimes used to express the fact that the debt has become payable.

The priority of the United States extends as well to debts by bonds for duties which are payable after the insolvency or decease of the obligor, as to those actually payable or due at the period thereof.

In the strictest sense, the bond for duties is debitum in presenti; although looking to the condition, it may be properly said to be solvendum in futuro. It is in this sense that the legislature is to be understood in the use of the words " debt due to the United States." Wherever the common law would hold a debt to be debitum in presenti, solvendum in futuro, the statutes giving the United States priority embrace it, just as much as if it were presently payable.

THIS case came before the court on a certificate of division from the circuit court of the United States for the district of North Carolina.

The facts of the case upon which the question submitted to this court arose, were as follows: Willian H. Lippett, a merchant of Wilmington, North Carolina, was, on the 14th of October 1828, indebted to the United States and to sundry persons, and among others to the State Bank of North Carolina; and on that day he made a general assignment of all his property to Talcott Burr, in trust to pay his creditors. The assignment directed that the sum of sixteen thousand six hun-

dred and twelve dollars and forty-seven cents should be paid to particular creditors, and that the residue of the property assigned, should be appropriated to the payment of bonds for duties to the United States. At the time of the assignment, Mr Lippett had given bonds to the United States for duties on merchandize amounting to seven thousand four hundred and eighty-six dollars and eighty-six cents; of which bonds, but one only, amounting to four hundred and nineteen dollars and ninety-seven cents, was due and unpaid when the assignment was executed.

In the cause in the circuit court, the question arose, " whether the priority to which the United States are entitled in case of a general assignment made by the debtor of his estate for the payment of debts, comprehends a bond for the payment of duties executed anterior to the date of the assignment, but payable afterwards." Upon this question the judges differed in opinion; and, on motion of the attorney of the United States, the point of law on which the disagreement arose, was stated under the direction of the said judges; and certified under the seal of the court to the Supreme Court of the United States, to be finally decided:

The case was argued by Mr Taney, attorney-general of the United States, for the plaintiffs; and by Mr Peters for the defendants.

Mr Taney stated: that the single question which was presented by the case for the consideration of this court, was, whether the priority of the United States attaches to bonds given to the United States for duties which are not due; but which had been given to the United States before the insolvency of the obligor.

The law of the sovereign, to be first paid, existed at the common law; it was an acknowledged prerogative of the crown, and the laws of the United States have done no more than adopt this known and established principle. If, therefore, the language of the acts of congress is doubtful, we may safely appeal to the common law, not as authority on this point, but for its sanction of the principle upon which this interpretation of our own statutes is claimed for the United States.

[United States v. The State Bank of North Carolina.]

The principle upon which the debts to which the plaintiffs are entitled are considered as due at the time of the execution of the bond, is familiar to the court. The obligatory part of a bond acknowledges a present debt, and it is by the condition only that its period of payment is postponed. In the distribution of assets in England, a preference is given to debts due by sealed instruments, although not payable at the time of the distribution. Toller's Exec. 275.

The constiuction of the law of the United States now claimed, has been that of universal practice since it was enacted. From 1797 down to the present period, it has been applied in favour of the United States to bonds not due, as well as to others to become due; and the estates of insolvents and intestates have been adjusted and settled on this principle in every section of the union. This received construction will induce the court to hesitate before it will adopt another; as it would open those long established settlements, and would be productive of great difficulty and confusion.

The principle contended for by the government, was recognized in the case of Thellusson v. Smith, 2 Wheat. 396, and in Conard v. The Atlantic Insurance Company, 1 Peters, 386. The point arose in the first case, although it was not discussed.

The act of congress of March 3, 1797, 1 Story's Laws U. S. 465, gives the priority to the United States, where persons are indebted to the United States by bond or otherwise. This is a provision for all debts due by public debtors; and it operates upon all cases, unless some exception in favour of particular persons shall be found in subsequent laws, which is not the case.

The act of March 2d, 1799, by the sixty-fifth section, declares the priority shall apply to bonds for duties; and it is upon the language of that section that the doubt which has arisen in this case has been founded. The provision is, that where bonds for duties are not satisfied on the day they *become due,* suits shall be brought; and where the estate in the hands of executors, administrators or assignees, shall be insufficient to *pay* all *the debts* due, the United States shall be first paid.

There is nothing in the provisions of this section which interferes with those of the law of 1797. Both are in force, and

both operate on the case of a debtor by duty bonds. All duties are in fact due when the goods are imported upon which they accrue, and the indulgence which is given for their payment, does not take away the essential feature in them. Even then, upon this section alone, the right of the United States rests in safety; but if the words of the section are equivocal, as the act of 1797 is not repealed, and is not inconsistent with it, the priority will be protected by that act. The fifth section of that act applies to the cases of all persons " indebted to the United States." It has been so held in the case of the United States v. Fisher. 2 Cranch, 358, 394; and the title of the act, as was decided in that case, does not limit its provisions to receivers of public money only. In construing a statute, the court always looks to laws in pari materia.

There is a stronger reason for the application of the rights of the United States to a priority of payment, in the cases of debts due to them by merchants, as the business of commerce is more precarious than any other. A large portion of the revenue of the nation is derived from its commerce, and it is essential that this revenue should be secured and certain. It was a part of the early legislation of the United States to introduce this provision, for the protection of the revenue; and hence it is found in the forty-fifth section of the act of August 4, 1790.

Mr Peters, for the defendant, contended, that from the first organization of the revenue system by the government of the United States, down to the period of the last legislation on the subject of duty bonds, they had been treated differently from other debts due to the United States. While it was admitted that, by the act of 1797, all persons, other than those who were liable to pay bonds given for duties on merchandize, were subject to the provisions of that law, and the priority of the United States attached equally to debts which were payable, or not, at the time of insolvency; such was not the law in reference to duty bonds. There was a good and satisfactory reason for this distinct and different course, as to the debts due by those engaged in commerce. The government is deeply interested in the preservation of mercantile credit, and the existence of an incumbrance, the extent and operation of

which could not be ascertained, if it attached to all the business of a merchant; and which might sweep away in favour of one preferred creditor all his means; it was seen would take largely from the confidence which was essential to the success of all operations in trade. Where bonds for duties have become due, and are unpaid, the amount of such debts could be known, but until then, they could not be ascertained.

The question here submitted to the court has never been judicially decided: and whatever may have been the practical construction heretofore given to the law, this Court will decide the case upon a careful examination of the provisions of the statutes, and upon those provisions only. The preference given to the United States is stricti juris; and has no foundation in prerogative. It exists by statutory provisions only; if it exists at all.

The forty-fifth section of the act of 1790 declares, that " any bond for the payment of duties *not satisfied on the day it becomes due,* shall be sued;" and it enacts, that in cases " where any estate is in the hands of the assignees and shall be insufficient to pay all the debts due, the debt due to the United States on *any such bond* shall be first satisfied."

In this section, and there is no other in the act of 1790 upon the matter; bonds *not satisfied on the day they become due* are to be put in suit, and any such bonds are to be first paid. No others are within the terms of the law.

The sixty-fifth section of the act of 1799 adopts the same language. Bonds, not satisfied on the day they become due, are to be sued out, and the preference is given to the debts "due to the United States on any *such* bond or bonds." It is claimed that the legislation of congress upon such bonds is full; and no aid is to be obtained from the act of 1797 in the interpretation of it. There is no room for the application of acts in pari materia; nor are the subjects of the laws the same. The system is complete as applicable to commercial debtors by the acts of 1790 and 1799. The rights of the United States in other cases rest on the act of 1797.

In Hunter v. The United States, 5 Peters, 173, Mr Justice M'Lean, who delivered the opinion of the court, intimates a doubt whether, where a judgment has been obtained by the United States against assignees after an assignment, there might

not have been some ground to question the right of priority claimed by the United States in such a case.

The priority of the United States has been held to exist in the cases only which come within the statutes, on their strictest construction. Any one who has given bonds to the government may pay the debts due by him to others; although his ability to discharge the debt due to the United States may be destroyed thereby. Unless a general assignment shall be made, there has been no "insolvency" within the purposes of the statute. Bona fide securities, given to creditors by one in insolvent circumstances, are not affected by the claim to priority. The United States v. Hooe, 3 Cranch, 73; Thellusson v. Smith, 2 Wheat. 396; Conrad v. The Atlantic Insurance Company, 1 Peters, 387; The United States v. Howland, 4 Wheat. 108.

The principle derived from these decisions is, that the right of the United States to payment of its debts, does not attach to the property of the debtor from the commencement of the obligation to pay, and infect it, so that it is not entirely disposable by him. The "insolvency," which deprives the debtor of this right, must be a legal insolvency. The evidence of this is bankruptcy, or a general assignment.

What shall be considered as debts due may be well ascertained by a reference to English authorities upon the law of set off. Cited, Ex parte Prescott, 1 Atk. 229; Rose v. Hart, 8 Taunt. Rep. 503; 2 Brod. & Bingh. 89; 5 Barn. & Alderson, 86.

Mr Justice STORY delivered the opinion of the Court.

This case comes before the court upon a certificate of division of opinion of the judges of the circuit court for the district of North Carolina.

The suit is an information by the United States in the nature of a bill in equity, seeking to recover against the defendant, and Talcott Burr, as the assignee of William H. Lippett, the amount of custom house bonds owing by Lippett to the United States; Lippett having become insolvent, and having made a voluntary assignment of all his property to Burr, for the benefit of his creditors, by which he has given a preference of payment to certain creditors, who are made defendants;

and, among others, to the State Bank of North Carolina, before payment to the United States. The Bank of North Carolina appeared and pled a demurrer to the information; and, upon the argument of that demurrer, it occurred as a question, whether the priority to which the United States are entitled, in case of a general assignment made by the debtor of his estate for the payment of debts, comprehends a bond for the payment of duties executed anterior to the date of the assignment, but payable afterwards. Upon this question the judges were divided in opinion; and it now stands for the decision of this Court.

The right of priority of payment of debts due to the government is a prerogative of the crown well known to the common law. It is founded not so much upon any personal advantage to the sovereign, as upon motives of public policy, in order to secure an adequate revenue to sustain the public burthens and discharge the public debts. The claim of the United States, however, does not stand upon any sovereign prerogative, but is exclusively founded upon the actual provisions of their own statutes. The same policy, which governed in the case of the royal prerogative, may be clearly traced in these statutes; and as that policy has mainly a reference to the public good, there is no reason for giving to them a strict and narrow interpretation. Like all other statutes of this nature, they ought to receive a fair and reasonable interpretation, according to the just import of their terms.

The first enactment on this subject will be found in the duty collection act of 4th of August, 1790, chapter 62, section 45, which provides, that " where any bond for the payment of duties shall not be satisfied on the day it became due, the collector shall forthwith cause a prosecution to be commenced for the recovery of the money thereon by action or suit at law in the proper coduct having cognizance thereof. And, in all cases of insolvency for where the estate in the hands of the executors or administrators shall be insufficient to pay all the debts due from the deceased, the debt due to the United States on any such bond shall be first satisfied." So that, in point of fact, the priority was first applied to bonds for the payment of duties, and to persons engaged in commerce; which disposes of that part of the argument of the de-

fendant which has been founded upon·a supposed policy of
the government to favour merchant importers in preference
to any other class of their debtors.

Then came the act of 3d of March 1791, chapter 75, which
extended the right of priority of the United States to other
classes of debtors, and gave a definition of the term insolvency,
in its application to the purposes of the act.  It provides,
" that, where any revenue or other officer, or other person
hereafter becoming indebted to the United States, by bond or
otherwise, shall become insolvent, or where the estate of any
deceased debtor in the hands of executors or administrators
shall be insufficient to pay all the debts due from the deceased,
the debt due to the United States shall be first satisfied; and
the priority hereby established shall be deemed to extend as
well to cases in which a debtor, not having sufficient property
to pay all his debts, shall make a voluntary assignment thereof,
or in which the estate of an absconding, concealed, or absent
debtor shall be attached by process of law, as to cases in which
an act of legal bankruptcy shall be committed." This act is
still in force; and unless its application to the present case is
intercepted by the act of 1799, chapter 128, its terms would
seem sufficiently broad to embrace it. The language is, where
any person " becoming indebted to the United States by bond
or otherwise" (which clearly includes a debtor upon a custom
house bond) " shall become insolvent," (which is the predica-
ment of Lippett) " the debt due to the United States shall
first be paid. " What debt is here referred to ?  A debt which
is then actually payable to the United States ?  Or a debt then
arising to the United States, whether then payable, or payable
only in futuro ?  We think the latter is the true construction
of the term of the act.  The whole difficulty arises from the
different senses in which the term " due" is used.  It is some-
times used to express the mere state of indebtment, and then
is an equivalent to owed, or owing.  And it is sometimes used
to express the fact that the debt has become payable.

Thus, in the latter sense, a bill or note is often said to be
due, when the time for payment of it has arrived.  In the
former sense, a debt is often said to be due from a person,
when he is the party owing it, or primarily bound to pay,
whether the time of payment has or has not arrived. . This

[United States v. The State Bank of North Carolina.]

very clause of the act furnishes an apt illustration of this latter use of the term. It declares that the priority of the United States shall attach " where the estate of any deceased debtor, in the hands of executors or administrators, shall be insufficient to pay all the debts *due* from the deceased." Here the word "due" is plainly used as synonymous with owing. In the settlement of the estates of deceased persons, no distinction is ever taken between debts which are payable before or after their decease. The assets are equally bound for the payment of all debts. The insufficiency spoken of in the act, is an insufficiency not to pay a particular class of debts, but to pay all debts of every nature. Now, if the term " due," in reference to the debts of deceased persons, means owing, and includes all debts, whether payable in presenti or not; it is difficult to perceive how a different meaning can be given to it, in regard to the debt of the United States, considering the connexion in which it stands in the sequel of the same sentence. "Where the estate, &c. shall be insufficient to pay all the debts due from the deceased, the debt due to the United States shall be first satisfied." The obvious meaning is, that in case of a deficiency of assets, the debt owing to the United States shall be paid before the debts owing to the other creditors.

The only real doubt in the present case, arises from the phraseology of the sixty-fifth section of the act of the 2d of March 1799, chapter 128; which provides, that " where any bond for the payment of duties shall not be satisfied on the day it may become due, the collector shall forthwith, and without delay, cause a prosecution to be commenced for the recovery of the money thereon, in the proper court having cognizance thereof. And in all cases of insolvency, or where any estate in the hands of executors, administrators or assignees, shall be insufficient to pay all the debts due from the deceased, the debt or debts due to the United States *on any such bond or bonds*, shall be first satisfied." The argument is, that the words " any such bond or bonds" refer to the bonds mentioned in the introductory part of the sentence, that is, to bonds for duties which have become payable, and are not paid. But we think, that this construction is not necessary or unavoidable. The words " such bond or bonds" are fully satisfied by referring them as matter of description to bonds for the pay-

ment of duties, whether then payable or not.    The description
is of a particular class of bonds, viz. for the payment of duties,
and not of the accidental circumstance of their time of pay-
ment.

No reason can be perceived, why, in cases of a deficiency
of assets of deceased persons, the legislature should make a
distinction between bonds which should be payable at the time
of their decease, and bonds which should become payable
afterwards. The same public policy which would secure a pri-
ority of payment to the United States in one case, applies with
equal force to the other; and an omission to provide for such
priority in regard to bonds payable in futuro, would amount
to an abandonment of all claims, except for a pro rata dividend.
In cases of general assignments by debtors, there would be a
still stronger reason against making a distinction between
bonds then payable and bonds payable in futuro; for the debtor
might, at his option, give any preferences to other creditors,
and postpone the debts of the United States of the latter de-
scription; and even exclude them altogether.    In the case be-
fore the court, the assignment expressly postpones the claims
of the United States in favour of mere private creditors.    It
would be difficult to assign any sufficient motive for the legis-
lature to allow the public debtors to avail themselves of such
an injurious option.    If, then, no reason can be perceived for
such a distinction, grounded upon public policy; the language
ought to be very clear, which should induce the court to adopt
it.    There should be no other rational means of interpreting
the terms, so as to give them their full and natural meaning.
This, we think, is not the predicament of the present language.
Every word may have a fair construction, without introducing
any such restrictive construction.    There is this additional
consideration which deserves notice, that, in our view, the act
of 1797, chapter 74, clearly embraces all debts of the United
States, whether payable at the decease of the party or after-
wards.    There is no reason to presume that the legislature in-
tended to grant any peculiar favour to merchant importers; for
otherwise the priority of the United States would have been
withdrawn from all bonds for duties, and not (as the argument
supposes) from a particular class of such bonds.    And as there
is no repeal of the act of 1797, chapter 74, except such as may

arise by implication from the terms of the sixty-fifth section of the act of 1799, chapter 128; if these terms cover only cases of bonds actually become due, they leave the act of 1797 in full force with regard to all other bonds.

But if this reasoning were less satisfactory to our minds than it is, there is another ground upon which we should arrive at the same conclusion. The act of 1799, chapter 128, in the sixty-second section, prescribes the form of bonds for the payment of duties. It is the common form of a bond with a penalty upon a condition underwritten. The obligatory part admits a present existing debt due to the United States, which the party holds himself firmly bound to pay to the United States. The condition, in a legal sense, constitutes no part of the obligation, but is merely a condition, by a compliance with which the party may discharge himself from the debt admitted to be due by the obligatory clause. And accordingly it is well known, that in declarations on bonds with a condition, no notice need be taken of the existence of the condition. If the debtor would avail himself of it, he must pray oyer of it, and plead it by way of discharge. In the strictest sense, then, the bond is a debitum in presenti, though looking to the condition it may be properly said to be solvendum in futuro: and we think that it is in the sense of this maxim, that the legislature is to be understood in the use of the words, "debt due to the United States." Wherever the common law would hold a debt to be debitum in presenti, solvendum in futuro, the statute embraces it just as much as if it were presently payable.

It is not unimportant to state, that the construction which we have given to the terms of the act, is that which is understood to have been practically acted upon by the government, as well as by individuals, ever since its enactment. Many estates, as well of deceased persons, as of persons insolvent who have made general assignments, have been settled upon the footing of its correctness. A practice so long and so general, would, of itself, furnish strong grounds for a liberal construction; and could not now be disturbed without introducing a train of serious mischiefs. We think the practice was founded in the true exposition of the terms and intent of

the act: but if it were susceptible of some doubt, so long an acquiescence in it would justify us in yielding to it as a safe and reasonable exposition.

This opinion will be certified to the circuit court of the North Carolina district.


This cause came on to be heard on the transcript of the record from the circuit court of the United States for the district of North Carolina, and on the point and question on which the judges of the said circuit court were opposed in opinion, and which was certified to this Court for its opinion, agreeably to the act of congress in such case made and provided, and was argued by counsel; on consideration whereof, it is ordered and adjudged by the Court, that it be certified to the circuit court of the United States for the district of North Carolina, upon the question upon which the judges of that court were divided, and which has been certified to this court; that this court is of opinion that the priority to which the United States are entitled in case of a general assignment made by a debtor of his estate for the payment of debts, comprehends a bond for the payment of duties, executed anterior to the date of the assignment, but payable afterwards.