LABADIE *et al.* v. SMITH.

No. 3204.    Opinion Filed April 17, 1914.

(140 Pac. 427.)

INDIANS—Descent and Distribution—What Law Governs.    Under the Act of April 28, 1904, c. 1824, 33 St. 573, the Arkansas law of descent and distribution of decedents' estates, as provided in chapter 49, Mans. Dig. (secs. 2522-2545), was extended over and put in force as to the estates of all tribes of Indians and all other persons, freedmen or otherwise, in the Indian Territory. And the heirs of a deceased member of the Peoria Tribe who died in 1906 inherited under the Arkansas law.

(Syllabus by Harrison, C.)

*Error from District Court, Ottawa County;*
*Preston S. Davis, Judge.*

Action by Isadora Smith against Ella Labadie, Roy C. Labadie, Edna Labadie Jones, William Groom, and G. W. Helmick. Judgment for plaintiff, and defendants bring error.   Affirmed.

*E. E. Sapp, D. W. Cooter,* and *L. T. Crum,* for plaintiffs in error.

*F. D. Fulkerson,* for defendant in error.

Opinion by HARRISON, C.   This was an action by Isadora Smith against her stepmother and half-brother and sister for a one-third interest in the estate of her deceased half-brother and for her share of the rents from same.   The defendants, Groom and Helmick, were tenants on the estate and were made parties defendant.   The facts are:  That one Charles Labadie, a Peoria Indian, died in the year 1899 and left surviving him his wife, Ella Labadie, a white woman, and three children by her, and one, Isadora Smith, by a former wife.   The children by the latter wife were the defendants Roy C. Labadie, Edna Labadie Jones, and Clarence Raymond Labadie, who afterward in 1906 died intestate and without issue, possessed of certain tracts of land.   After his death the mother went into possession of this land under the Kansas law of descent and distribution.   In 1910, Isadora Smith, the child by the former wife, brought this action against the surviving wife and her two surviving children, claiming that the land of her deceased half-brother descended to her and her surviving half-brother and sister under the laws of Arkansas and that the surviving wife had no interest in the estate of her deceased son, Clarence Raymond Labadie.   The defendants answered, claiming the estate of the deceased under the Kansas law of descent and distribution which, by the Act of Congress Feb. 8, 1887, c. 119, sec. 5, 24 Stat. 389, as amended by Act of Congress March 2, 1889, c. 422, 25 Stat. 1013, was put in force as to the estates of the Peoria and some other tribes of Indians, and that such law, having never been repealed, was in force at the time of Clarance Labadie's death, and that the mother, Ella Labadie, under such law inherited all of her son's estate; she being the sole surviving parent.   The issues being

thus joined by petition and answer, the plaintiff, Isadora Smith, moved the court for judgment on the pleadings. The court sustained the motion and rendered judgment upon the pleadings in her favor, decreeing her a one-third interest in the estate on the theory that the Arkansas law was in force at the time of the death of her half-brother, and from such judgment the defendants appeal.

It is conceded by counsel for both parties to the appeal that a proper determination of the case depends upon which law of descent and distribution was in force at the time Clarence Labadie died. It is contended by plaintiffs in error that the Kansas law was in force, and by defendant in error that the Arkansas law was in force. Hence a review of the different acts of Congress on the subject is necessary in order to properly determine the controversy.

In 1887 (24 St. at L. 389) Congress passed an act providing for the allotment of lands in severalty to certain tribes of Indians, section 5 of which provides in part as follows:

"* * * Provided, that the laws of descent and partition in force in the state or territory where such lands are situate shall apply thereto after patents therefor have been executed and delivered, except as herein otherwise provided; and the laws of the state of Kansas regulating the descent and partition of real estate shall, so far as practicable, apply to all lands in the Indian Territory which may be allotted in severalty under the provisions of this act. * * *"

Under section 8 of this act, it is provided that the Peoria Indians, of which tribe the heirs in question were members, together with some other tribes of Indians, were excepted from its provisions, but by the Act of March 2, 1889, c. 422, 25 St. at L. 1013, the provisions of section 5, *supra,* were extended to the Peoria and some other tribes. Thus the law of descent and distribution was extended to and remained in force as to the Peoria Tribe until the Act of April 28, 1904, c. 1824, 33 St. at L. 573, which in part provided:

"All the laws of Arkansas heretofore put in force in the Indian Territory are hereby continued and extended in their operation, so as to embrace all persons and estates in said territory, whether Indian, freedmen, or otherwise, and full and

complete jurisdiction is hereby conferred upon the district courts in said territory in the settlements of all estates of decedents, * * * whether Indians, freedmen, or otherwise. * * *"

It is true, as contended by plaintiffs in error, that said act contained no repealing clause of laws in conflict therewith. Hence, if the provisions of the acts of 1887, 1889, *supra,* which put the Kansas law of descent in force, were repealed at all, they were repealed by implication; counsel for plaintiffs in error contending that such acts were not so repealed, citing a strong list of authorities in opposition to repeals by implication; and, while the authorities cited are strongly in opposition to the general doctrine of repeals by implication, yet they do not cover and should not control the exact question involved in the case at bar. For, prior to the Act of April 28, 1904, c. 1824, 33 St. at L. 573, there had been no universal law on the subject of descent and distribution applicable alike to all the tribes of Indians, freedmen, or otherwise, within the limits of the Indian Territory. By such act a universal law applicable alike to all tribes of Indians, freedmen, or otherwise, and all other persons within the limits of the Indian Territory, was provided, and the Arkansas law of descent and distribution (chapter 49, Mansf. Dig.) was put in force. It was evidently the intent of Congress, in order to avoid the interminable conflicts which would necessarily arise from laws of descent applicable to some tribes and not applicable to others, to provide a universal law applicable to all alike and to repeal all laws in conflict therewith. The necessity for such a universal law was so great and the intricate controversies liable to arise under the then existing and conflicting laws of descent so numerous, that the intention of Congress to provide a law of universal application is too clear to admit of doubt. While we do not feel that the departmental construction of legislative intent is controlling or binding upon this court, yet considerable light on the subject may be had from an opinion from the Assistant Attorney General to the Department of Indian Affairs, wherein the rights of the heirs of an Eastern Shawnee, whose status as to descent was the same as that of the Peorias, were involved; the opinion being as follows:

"Sir: The Department is in receipt of your letter of February 1, 1907 (Land 91656-1907), submitting the succession of Lucinda Dick, Eastern Shawnee, requesting decision by the Department for determination of the rule of descent for distribution of proceeds of sale of her allotted lands. Allotment of the lands was made to her under the Act of February 8, 1887 ([C. 119] 24 St. at L. 388). Section 5 whereof provided that: 'The laws of the state of Kansas regulating the descent and partition of real estate shall, so far as practicable, apply to all lands in Indian Territory which may be allotted in severalty under the provisions of this act.' The Act of May 2, 1890 ([C. 182] 26 St. at L. 81, 94), sections 30 and 31, provided: 'Sec. 30. * * * The judicial tribunals of the Indian nations shall retain exclusive jurisdiction in all civil and criminal cases arising in the country in which members of the nation by nativity or by adoption shall be the only parties; and as to all such cases the laws of the state of Arkansas extended over and put in force in said Indian Territory by this act shall not apply. Sec. 31. * * * That certain general laws of the state of Arkansas * * * as published in * * * Mansfield's Digest of the Statutes of Arkansas, which are not locally inapplicable or in conflict with this act or with any law of Congress, relating to the subjects specially mentioned in this section, are hereby extended over and put in force in the Indian Territory until Congress shall otherwise provide, that is to say, the provisions of the said general statutes relating to administration, chapter one * * * to descents and distributions, chapter forty-nine.' The Act of June 7, 1897 ([C. 3] 30 St. at L. 62, 83), provided that after January 1, 1898, the United States courts in Indian Territory have exclusive jurisdiction of all civil causes after that date instituted, and all criminal causes for punishment of offenses after that date committed, and that the laws of the United States and the state of Arkansas in force in the territory shall apply to all persons therein, irrespective of race, said courts exercising jurisdiction thereof as now conferred upon them in trial of like causes. The Act of April 28, 1904 [C. 1824], sec. 2 (33 St. at L. 573), provided: 'All the laws of Arkansas heretofore put in force in the Indian Territory, are hereby continued and extended in their operation so as to embrace all persons and estates in said territory, whether Indian, freedmen, or otherwise, and full and complete jurisdiction is hereby conferred upon the district courts in said territory in the settlement of all estates of decedents * * * whether Indians, freedmen or otherwise.' The Act of June 28,

1898 [C. 517], sec. 26 (30 St. at L. 495, 504), forbids enforcement of tribal laws in courts of the United States, and section 28 abolished the tribal courts, July 1, 1898, as to all but three tribes named, and as to them on October 1, 1898, so that no courts existed for enforcement of tribal laws. The effect of this was to abolish the tribal law of descent. *Nivens v. Nivens* (64 Saw. 604).

"Lucinda Dick died July 14, 1905, seised of her allotted lands, and the question determining devolution of her lands depends on whether the law of Kansas or Arkansas governed the succession at date of her death. The Act of 1890 is necessary to be considered for interpretation of the Act of 1897 making the laws of Arkansas then in force as to persons not tribal Indians applicable to 'all persons therein irrespective of race,' and Act of 1904 which 'continued and extended' the Arkansas laws, then partially in force, to 'embrace all persons and estates,' Indian or otherwise. No room is left to doubt that Congress intended to make the law uniform as to all classes of persons and their estates. It is a fundamental proposition that no one is heir to any one living, so that no expectant rights of inheritance or succession are vested rights or can become vested till death of the *propositus* last seised. It necessarily follows that change in the law of succession is purely a question of legislative policy, and that the legislative action upon it is conclusive, violating no right and admitting no review by either executive or judicial authority. In case of Loyal Creek Claims (25 Ops. Attys. General, 163, 165) the Attorney General rendered opinion that the Act of June 7, 1897, *supra,* 'operated to extend the Arkansas law of distribution to the individual estates of Indians dying after January 1, 1898.' The act was general and applied to all Indians, not to Creeks alone, and from April 28, 1904, at least, the laws of Arkansas so partially adopted by Act of June 7, 1897, were extended to all persons and all decedents' estates. The Department therefore decides and you are instructed that as Lucinda Dick died after April 28, 1904, the lands of which she died seised descended and their proceeds are to be distributed according to the law of descent and succession of real estate under the laws of the state of Arkansas, in force at close of the general assembly of that state of 1883, as published in 1884, in the volume known as Mansfield's Digest of the Statutes of Arkansas."

This interpretation of the law has been recognized and followed by the Department since the Act of April 28, 1904, went into effect. Upon the subject of courts being controlled by de-

partmental construction, the Supreme Court of the United States, in *United States v. Moore,* 95 U. S. 763, 24 L. Ed. 588, said:

"The construction given to a statute by those charged with the duty of executing it is always entitled to the most respectful consideration, and ought not to be overruled without cogent reasons. *Edwards v. Darby,* 12 Wheat. 210 [6 L. Ed. 603]; *United States v. State Bank of North Carolina,* 6 Pet. 29 [8 L. Ed. 308]; *United States v. MacDaniel,* 7 Pet. 1 [8 L. Ed. 587]. The officers concerned are usually able men, and masters of the subject. Not infrequently they are the draftsmen of the laws they are afterwards called upon to interpret."

Again, in *United States v. Alabama Ry. Co.,* 142 U. S. 621, 12 Sup. Ct. 308, 35 L. Ed. 1134, the court held:

"The contemporaneous construction thus given by the executive department of the government, and continued for nine years through six different administrations, * * * should be considered as decisive in this suit. It is a settled doctrine of this court that, in case of ambiguity, the judicial department will lean in favor of a construction given to a statute by the department charged with the execution of such statute, and, if such construction be acted upon for a number of years, will look with disfavor upon any sudden change."

Also, this court in *League v. Town of Taloga,* 35 Okla. 277, 129 Pac. 702, it was held:

"The construction placed on statutes or constitutional provisions by officers in the discharge of their duties, either at or near the time of the enactment, which has been long acquiesced in, is a just medium for its judicial interpretation."

There being a federal question in the case at bar, we feel inclined to, if not bound by, the doctrine announced in the foregoing decisions. Besides, there is a sharp, decided conflict in the provisions of the two acts; the one being applicable only to the tribes therein mentioned, the other, a later act, being expressly made applicable to all tribes and other persons, freedmen, or otherwise, within the limits of the Indian Territory. The general rule in such cases is that, "where two legislative acts are repugnant to or in conflict with each other, the one last passed, being the latest expression of the legislative will, must govern, although it contains no repealing clause." 36 Cyc. 1073, and authorities cited.

Also, in *Mining Co. v. Gardner,* 173 U. S. 128, 19 Sup. Ct. 328, 43 L. Ed. 637, the Supreme Court held:

"Statutes are indeed sometimes held to be repealed by subsequent enactments, though the latter contain no repealing clauses. This is always the rule when the provisions of the latter acts are repugnant to those of the former, so far as they are repugnant. The enactment of provisions inconsistent with those previously existing manifests a clear intent to abolish the old law. In *United States v. Tymen,* 11 Wall. 92 [20 L. Ed. 153], it was said by Mr. Justice Field that: 'When there are two acts upon the same subject, the rule is to give effect to both, if possible. But if the two are repugnant in any of their provisions, the latter act, without any repealing clause, operates to the extent of the repugnancy as a repeal of the first; and even where two acts are not, in express terms, repugnant, yet, if the latter act covers the whole subject of the first, and embraces new provisions, plainly showing that it was intended as a substitute for the first act, it will operate as a repeal of that act.' * * * This is, undoubtedly, a sound exposition of the law. But it must be observed that the doctrine asserts no more than that the former statute is impliedly repealed, so far as the provisions of the subsequent statute are repugnant to it, or so far as the latter statute, making new provisions, is plainly intended as a substitute for it."

Hence, in view of the foregoing authorities and the conditions existing in the Indian Territory at the time the Act of April 28, 1904, went into effect, we believe that the judgment of the trial court should be affirmed.

By the Court: It is so ordered.