### In re DUNCAN CONST. CO.

(District Court, S. D. West Virginia.   March 3, 1922.)

No. 1057.

1. **Bankruptcy** ☞188(1)—**Language construed, and held effective as pledge ot fund.**

Bankrupt was building a road under a contract with a county containing a provision for reservation by the county of 10 per cent. of all sums due on monthly estimates until completion of the work.   Needing money to meet a monthly pay roll, claimant bank, after consultation with a member of the county court and the road engineer, and ascertaining that there was then in the reserved fund about $4,700, lent bankrupt $2,200, which was used in paying employees, taking a note containing a pledge as collateral "out of account due from estimates from the county court" of the county, notice of which was given to the county court.   No monthly esti·mate was then due.   *Held,* that such language was intended to, and did, effect a valid pledge of the fund reserved, and that claimant was entitled to payment therefrom when received by bankrupt's trustee on completion of the contract.

2. **Words and phrases—"Due" defined.**

The word "due," in its larger sense, covers liabilities matured and unmatured, and its meaning as used depends on the context and evident purpose intended.

In Bankruptcy.   In the matter of the Duncan Construction Company, bankrupt.   On referee's certificate for review of order disallowing claim of the First National Bank of Marlinton as a secured claim. Reversed.

J. E. Campbell and J. H. McClintic, both of Charleston, W. Va., and L. M. McClintic, of Marlinton, W. Va., for petitioners.

R. E. Hughes and C. W. Good, both of Charleston, W. Va., for trustee.

McCLINTIC, District Judge. [1] By contract dated on the 21st day of October, 1919, the county court of Pocahontas county entered into a written contract with the Duncan Construction Company for certain road work, as set out in the contract, between the county seat. Marlinton, and the village of Huntersville, in that county.   The contract provides for certain prices, and also provided the usual agreement as to a reservation of 10 per cent. from each monthly estimate, to be retained by the county court until after the completion of the entire contract and the acceptance of the work to be done by the county court.   The work commenced, and progressed until, on the 5th of August, 1920. this 10 per cent. amounted to $4,713.54.

On the 5th of August, 1920, the manager in charge of the work had no money to meet his pay roll, and the men were waiting for their money in the town of Marlinton, the county seat of said county, and the manager applied to the First National Bank in Marlinton for a loan of $2,200 for the purpose of paying the labor then ·due and unpaid. The bank refused the loan until Mr. W. H. Barlow, a member of the county court, could be consulted.   He came to the bank, and also brought the road engineer, and it was shown to the bank officers that

this sum above named was retained by the county court, and would be payable to the contractor when the job was finished. No other sums of money were due from the county to the contractor at that time, and it was necessary that the labor should be paid, if the work was to be continued.

The Duncan Construction Company gave a note to the First National Bank of Marlinton for the sum of $2,200, the proceeds of which note were immediately turned over to the contractor, and immediately paid by the contractor to the persons who had performed labor on said work during the preceding month. Notice was immediately given to the county court of that fact, and the work progressed. For this sum of money the Duncan Construction Company gave to the bank a note bearing date August 5, 1920, for the sum of $2,200, and payable to the bank 30 days after date. This note was given on the collateral form used by the bank, and pledged that amount due from the county court, as understood by all the parties at that time, as follows:

"Having pledged and deposited with the said First National Bank of Marlinton, West Virginia, as collateral security for the payment of this note and any renewals thereof, the following, viz.: Out of account due from estimates from the county court of Pocahontas county, West Virginia."

It appears from the record in this case that at that moment there was actually nothing, in the sense of being immediately payable, "due" from the county court to the contractor, which fact was well known to the contractor, to the county court and the members thereof, and the road engineer. Later, in the month of September, a receiver was appointed by the state court for the contractor, and the work progressed a while under the direction of the court and this receiver. There was an estimate of something over $1,600 for the month of August, and about two-thirds thereof was paid to this receiver, and about one-third for tools and material used on the work.

The receivership in the state court was followed by the bankruptcy proceeding in this court, and a trustee was appointed, and the work progressed and was finally finished, and, including the sum of $4,713.54, there was paid to the trustee in this cause by the county court as a final estimate the sum of $7,526.02. The question decided by the referee, now before this court for decision, was whether the First National Bank had a secured claim upon the sum of $4,713.54, to secure the payment of its note, with interest from maturity. The referee held that it was not a secured claim, and that the bank was only a general creditor, along with all the other creditors of the contractor, and the whole amount received by the trustee from the county court of Pocahontas county would then be sufficient to pay 24 per cent. upon the debts proven.

Upon the argument here it was claimed in behalf of the trustee that there were two accounts out of which it could be equally claimed that this note, if it had any security at all, was due; that is, the estimate earned in the month of August, as well as the amount in the hands of the county court, under the reservation in the contract at the date of the note. I see no merit in the proposition that it was the duty of the bank to insist upon payment out of the estimates for the month of Au-

gust, for such estimate had not yet been earned, and when it was earned it was used for the purpose of continuing the work, and thereby saving said sum of $4,713.54.

[2] The construction put upon the language typewritten on the note, to wit, "Out of account due from estimate from the county court of Pocahontas county, West Virginia," by the referee, is in my opinion, under all the circumstances surrounding the transaction, too narrow and technical. In the language of Justice Story, in the case of United States v. State Bank of North Carolina, 31 U. S. (6 Pet.) 29, 8 L. Ed. 308, the word "due," in its larger sense, covers liabilities matured and unmatured, and he further says that "much depends upon the context and evident purpose intended." This idea runs through all the decisions upon this word. All the surrounding circumstances must be taken into consideration, to arrive at the meaning intended by the parties at the time the note was made and the security given. At that time there was no money immediately due, in the sense of being immediately payable, from the county court of Pocahontas county to the contractor.

If the meaning asked to be given to the word "due" by the trustee in this case is correct, then this whole transaction, this whole attempt on the part of the bank to get security for the money which it was then paying out to the laborers of the contractor, and the attempt on the part of the contractor to give security for such present consideration, and the attempt on the part of the county court to accept notice thereof, were all futile and of no effect. It was plainly the purpose of the parties, at this meeting on the 5th of August, 1920, to give the bank security for this note, and in my opinion it is the duty of this court to put a construction upon the language used and the acts done that would carry out this evident purpose, if it is possible to do so. The laborers, to whom this money was paid, had liens under the laws of West Virginia upon all the property of the contractor, at that time, to secure their unpaid wages, and they likewise would have had liens upon such property in the bankrupt court. The county court was anxious to have the work finished; the contractor was naturally anxious to finish it; it was for the benefit of the community, and it was for the benefit of all the creditors of the contractor, that the work should be finished, and the reserve 10 per cent. paid to the contractor or those claiming under it.

There is no doubt but that the contractor, subject to the rights of the county court under the contract between the court and the contractor, had the right to assign, either as collateral security, or fully and completely, the reserved 10 per cent. then in the hands of the county court. Of course, if the contract had not been finally completed, and the amount of the reserved money had not become due upon a final estimate, then such an assignment would have had no effect, and would have been of no value; but where, as in this case, the contract was fully completed, and the final estimate, including the reserved 10 per cent., was paid to the trustee, then the assignment by the contractor thereof was valid and binding. This reserved 10 per cent. then stood as an unmatured liability of the county court to the contractor, and as such was assignable, and was the only asset of the kind which was assignable,

at the time the note was given and the notice of such assignment accepted by the county court.

This meaning of the word "due" I find has been considered by Judge Brannon, in the case of Marstiller v. Ward, 52 W. Va. 74, 43 S. E. 178, where he holds that the word "due" was often held to have the meaning of merely "owing," whether unmatured or not. It is plain to me, as stated before, that it was the evident purpose of the parties in this case, as shown by the testimony of the discussion of the reserved 10 per cent., the amount thereof, and the condition of the work, that all the rights of the contractor in and to that reserved 10 per cent. were to be, and actually were, assigned to the bank to secure the note on the 5th of August, 1920.

Therefore an order should be drawn, reversing the holding of the referee, and ordering this note, with its interest from the date of its maturity, to be paid out of the money in the hands of the trustee as a secured debt.