## MOORE v. SHISLER.

(District Court, D. New Jersey. April 6, 1922.)

**1. Pleading ⬥360(1)—Motion to strike admits only facts well pleaded.**

A motion to strike out a complaint, under Practice Act N. J. 1912 (P. L. p. 377), for failure to disclose a cause of action is the equivalent of a demurrer, and does not admit conclusions of law, but only such facts as are well pleaded.

**2. Mechanics' liens ⬥113(2)—Prerequisites to stop notice under New Jersey statute.**

Under Mechanics' Lien Law N. J. (P. L. 1917, p. 821) § 3, which provides, inter alia, that whenever any contractor shall on demand refuse to pay a subcontractor "the money * * * due to him," the subcontractor may serve a stop notice on the owner, which shall be the basis for a lien and impose liability on the owner, as construed by the courts of the state, in order that the stop notice shall be effective the contractor must first be put in fault by a refusal to pay an amount then presently due and payable, and a demand for a sum which is not yet due under the terms of the subcontract is not effective to authorize a stop notice.

At Law. Action by David H. Moore against George W. Shisler. On motion to strike the complaint. Motion granted.

C. L. Cole and Lee F. Washington, both of Atlantic City, N. J., for the motion.

Bolte, Sooy & Gill, of Atlantic City, N. J., opposed.

BODINE, District Judge. The plaintiff entered into a contract to furnish the plumbing and heating work for a number of brick and frame houses one Wesley B. Porch was building at Atlantic City, under a contract for the defendant. The contract between Porch and the defendant was recorded in accordance with the provisions of the Mechanics' Lien Law.

This suit is predicated upon the performance of the plaintiff's contract, nonpayment for the work done, and the service upon the owner of the land of a stop notice in alleged pursuance of section 3 of the New Jersey Mechanics' Lien Law (P. L. 1917, p. 821). The question at issue is the effect of the notice.

The contract between plaintiff and Porch provided, with respect to payment, as follows (the italics are mine):

"On or about the first day of every month during the progress of the work, the plumbing and heating contractor shall submit to the general contractor, a copy of the pay roll and other expenditures put forth by him, the plumbing and heating contractor, during the previous month, also a statement of the cost of materials incorporated in the structures; upon the general contractor's receipt of such statement from the plumbing and heating contractor, he shall, within three (3) days of the receipt of same, pay or cause to be paid to the plumbing and heating contractor a sum equal to 50 per cent. of such statement presented by the plumbing and heating contractor.

"At the entire and full completion of the work, the plumbing and heating contractor shall submit to the general contractor *a full statement showing the contract price for the work plus any additions or deductions, with the full credits and payment for the balance shall be made within thirty (30) days after the receipt by the general contractor of such statement.*"

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The complaint shows that the work required under plaintiff's contract was not completed until July 16, 1920, and it was on this day that demand of payment was made upon Porch and the stop notice served, and it is said that, such demand and stop notice being premature, in that the contract provides that the payment shall be made within 30 days after the furnishing of the "full statement," that no rights arose by reason of the stop notice, and the plaintiff is without remedy against the owner of the land. Further the complaint nowhere states that the "full statement" called for by the contract was given by plaintiff to Porch, and it is urged that this "full statement" was a condition precedent to complainant's right to file a stop notice with the owner of the land, and that the sum for which the stop notice was served was not "due" within the meaning of the statute.

[1] A motion to strike out a complaint under the New Jersey Practice Act of 1912 (P. L. p. 377), for failure to disclose a cause of action, is the equivalent of a demurrer. Such facts only as are well pleaded are admitted and not conclusions of law. Tinsman v. Bel. Del. R. R. Co., 26 N. J. Law, 148, 69 Am. Dec. 565; Coxe v. Gulick, 10 N. J. Law, 328; Davis v. Minch, 80 N. J. Law, 214, 76 Atl. 328; Koewing v. West Orange, 89 N. J. Law, 539, 99 Atl. 203.

[2] Section 3 of the New Jersey Mechanics' Lien Law, on which the action is predicated, is to be found in Pamphlet Laws 1917, p. 821. How closely the act resembles the first enactment, as embodied in the Pamphlet Laws of 1853, p. 437 (Revision, p. 668), is shown below. The act of 1853 is set out in parentheses and italics; the act of 1917 in italics and ordinary type.

"(That) *Whenever any master workman or contractor*, or whenever any contractor under any master workman or contractor *shall, upon demand, refuse to pay any person who may have furnished* him material(s) *used in the erection of any such house or other building*, or any subcontractor, journeyman or laborer *employed by him in* (the) *erecting or constructing any building, the money or wages due to him, it shall be the duty of such journeyman*, (or) *laborer*, (or) *materialman* or subcontractor *to give notice in writing to the owner or* (the) *owners of such building*, and such master workman or contractor *of such refusal, and of the amount due to him or them and so demanded*, specifying said amount as nearly as possible, *and the owner or owners of such building shall thereupon be authorized to retain the amount so due and claimed by* (any) *such journeyman, laborer* (or) *materialman* or subcontractor *out of the amount owing by him or them* (to such master workman or contractor) on the contract or that thereafter may become due from him or them on such contract for labor or material used in the erection of such building, *giving* (him) the master workman or contractor and any contractor under any master workman or contractor *written notice of such notice and demand, and if the same be not paid or settled by said master workman or contractor*, or such contractor under any master workman or contractor, *such owner or owners, on being satisfied of the correctness of said* (such) *demand, shall pay the same, and the receipt of such journeyman, laborer*, (or) *materialman* or subcontractor *for the same shall entitle such owner or owners to an allowance therefor in the settlement of accounts between him and such master workman or contractor*, or his representatives or assigns, *as so much paid on account.*"

The original enactment was construed by Mr. Chief Justice Beasley in Reeve v. Elmendorf, 38 N. J. Law, 125, 132, where he says:

"Before the workman or subcontractor can notify the owner of his claim, he must put his employer in fault. The statute says that, when the contractor

shall, upon demand, refuse to pay the wages due, the owner may be notified. Now, therefore, until the contractor has refused to pay what is justly due and in arrear, the statutory remedy is not applicable."

The plaintiff's contention is that Reeve v. Elmendorf is no longer law, and that the 1917 amendment has modified the statute, so that the reasoning of Chief Justice Beasley no longer applies. The 1917 amendment, as above shown, merely enlarges the class who may have the benefit of section 3. It does not give a right to those whose claims are not due. There is no language in the amendment justifying a contrary suggestion. Mr. Vice Chancellor Van Fleet in Kirtland v. Moore, 40 N. J. Eq. 106, 2 Atl. 269, stated, so far as pertinent, the requisites to the maintenance of such an action:

"A person, to be in a position to be entitled to the remedy given by the third section of the mechanics lien law, must, in the first place, be a creditor of the contractor; not a general creditor, but a creditor whose debt was contracted for work done to the building erected by the contractor for the owner, or for material furnished for the building. Such is the plain direction of the statute. Second. He must be a creditor whose debt is due. Before a workman or materialman can notify the owner of his claim, he must put the contractor in fault. The statute says that when the contractor shall, upon demand, refuse to pay the money or wages due, the owner may be notified. *Until, therefore, the contractor has refused to pay what is justly due and in arrear, the statutory remedy is not applicable.* Reeve v. Elmendorf, 9 Vroom, 125. Third. There must be a demand and refusal, and the demand must be for such an amount as the creditor *is entitled to be paid at once.* There can be no recovery against the owner of a lesser sum than that demanded of the contractor, because the finding that such lesser sum was the debt really due, would, per se, show that the contractor was not in fault in refusing to pay. His obligation is to pay the money or wages due, and if more is demanded, he has a right to refuse to pay. Reeve v. Elmendorf, supra. Fourth. The creditor must give notice, in writing, to the owner, of the contractor's refusal to pay and of the amount by him demanded. In a case where all these requisites exist, the workman or materialman has a right to have the owner to retain the amount so due to him and demanded 'out of the amount owing by him to the contractor,' and the owner, on being satisfied of the correctness of the sum demanded, must pay the same to the workman or materialman, and the receipt of the workman or materialman will entitle the owner to an allowance therefor against the contractor. In a case where the statutory requisites exist, notice, given according to the statute, works an assignment, pro tanto, to the workman or materialman of the rights of the contractor against the owner. Wightman v. Brenner, 11 C. E. Green, 489. Upon notice given, the workman or materialman, to the extent of his demand, takes the place of the contractor. Reeve v. Elmendorf, supra. But if, when the notice is served on the owner, there is nothing owing to the contractor, and he is without right against the owner, the notice is without legal effect. Craig v. Smith, 8 Vroom, 549. The test is whether a suit for the money demanded will lie by the contractor against the owner; if it will not, the owner is not liable to a suit by the workman or materialman. Reeve v. Elmendorf, supra. The construction of the statute to this extent is settled, and the rights of the claimants to the fund in court must be determined by the rules above stated."

It is finally urged by the plaintiff that the word "due" in section 3 of the act should have the construction given the word "due" as set forth in the case of United States v. State Bank of Carolina, 6 Pet. 29, 8 L. Ed. 308. Whatever force there might have been in that argument prior to the decision in Reeve v. Elmendorf now requires no speculation. It may here be said in passing that the Legislature, as is

shown by the context of the act, used the word "due" as referring to that which was immediately "due," because the right to file a stop notice is given to him "whose money or wages are due." The notice, then, if it complies with the statute, is effective to stop in the hands of the owner such sum of money as is owing on the contract or thereafter *may become due on such contract.*

Clearly the Legislature recognized the distinction between that which is due and that which shall become due, and confined the rights arising from the stop notice to those whose claims were "due" and payable.

The motion will be granted.