Williams, Judge,
delivered the opinion of the court:
The plaintiff during the period involved was a captain of the United States Marine Corps without dependents. On March 29, 1927, he was ordered by competent authority to report to the commanding officer of the Sixth Regiment at the Navy Yard, Philadelphia, Pa., for duty in China. Under such orders he arrived at Shanghai, China, on May 2, 1927, and served with troops at Shanghai and Tientsin, China, until September 26,1928, when he reembarked for the United States where he arrived October 31, 1928. The Sixth Regiment formed a part of the Third Brigade, which during the period involved was under the command of Brigadier General Smedley D. Butler.
Public' quarters were not available to officers of the Third Brigade and the plaintiff at no time during the period of his detail was furnished adequate quarters at Government expense. The suit is for the rental allowance provided for officers without dependents to whom adequate public quarters are not furnished.
The sole question presented is whether the plaintiff was on “ field duty ” within the meaning of the law during the period of his detail in China.
Section 6 of the act of June 10, 1922, 42 Stat. 628, as amended and reenacted by the act of May 31, 1924, 43 Stat. 250; title 37, section 10, U.S.C., provides:
“ Except as otherwise provided in the fourth paragraph of this section, each commissioned officer below the grade of brigadier general or its equivalent, in any of the services mentioned in the first paragraph of section 1 of this title, while either on active duty or entitled to active-duty pay, shall be entitled at all times to a money allowance for rental of quarters. * * * ”
The exceptions contained in paragraph 4 of the section read:
“No rental allowance shall accrue to an officer having no dependents, while he is on field duty or sea duty, nor while an officer with or without dependents is assigned as quarters at his permanent station the number of rooms provided by law for an officer of his rank or a less number of rooms in any particular case wherein, in the judgment of a *629 competent superior authority of the service concerned, a less number of rooms would be adequate for the occupancy of the officer and his dependents.”
The act of May 31, 1924, contained the further provision:
“ Regulations in execution of the provisions of this section in peace and in war shall be made by the President and shall, whenever practicable in his judgment, be uniform for all of the services concerned, including adjunct forces thereof.”
The term “ field duty ” as used in the amendatory act of May 31, 1924, was defined in an Executive order issued by the President on August 13, 1924:
“ The term £ field duty ’ shall be construed to mean service, under orders, with troops operating against an enemy, actual or potential.”
The language used in the Executive order defining “ field duty ” is free from ambiguity. The order having the dignity and force of a statute must be construed under the rules applicable to the construction of statutes. One of the oldest rules of statutory construction is that words used in a statute when not ambiguous should be given their well-known and ordinary meaning unless the legislative intent that they be given some other and different meaning clearly appears. The rule is concisely stated in 36 Cyc., pp. 1113, 1114:
“ In the interpretation of statutes words in common use are to be considered in their natural, plain, and ordinary signification. It is a very well-settled rule that so long as the language used is unambiguous, a departure from its natural meaning is not justified by any consideration of its consequences, or a public policy; and it is the plain duty of the court to give it force and effect.”
In determining whether the plaintiff in this case was on field duty during the period of his detail we must look to the words used in the Executive order, and must give to them the usual and ordinary meaning and signification attaching to them when used in a military sense.
The words “ operation ” and “ enemy ” when used in a military sense have a well-known and universally recognized *630 meaning. “ Operations ” lias been defined in standard authorities as follows:
Century Dictionary and Encyclopedia:
“ Operation: * * * 8. The course of action or series of acts by which some result is accomplished; process * * * (c) In War the act of carrying out preconcerted measures by regular movements; as military or naval operations.”
New English Dictionary:
“ Operate (military and naval). To carry on warlike operations; see operations, I.
“ Operation 1 (military and naval). A series of warlike or strategic acts; a movement.”
Wilhelm’s Military Dictionary and Gazeteer, p. 368:
“ Operations, military. Consist in the resolute application of preconcerted measures in secrecy, dispatch, regular movements, occasional encampments, and desultory combats or pitched battles.”
Standard Dictionary:
“ Operations. A course or series of acts to effect a certain purpose * * * military operations.”
Farrow’s Military Encyclopedia:
“ Operations. Under the term ‘ Military Operations ’ are included: Field operations; offensive and defensive operations; underground operations; siege operations, etc. All consist in the resolute application of preconcerted measures in secrecy, dispatch, regular movements, occasional encampments, and desultory combats or pitched battles.”
Webster’s New International Dictionary defines “ enemy ” as follows:
“ 2. A member of a hostile army or person of a hostile nation; a military foe.”
The Standard Dictionary defines the word:
“A nation at war with another ”, or, “An army or military force hostile to another in the field.”
Applying these accepted definitions to the words “ operating ” and “ enemy ” as used in the Executive order, the conclusion seems inescapable that plaintiff was not on field *631 duty, that be had no service with troops operating against an enemy, actual or potential. The United States and China were not at war with each other during the period of the plaintiff’s service in that country, and neither the Grov-ernment of China nor any of its people was an enemy of the United States or its armed forces in a military sense. While, as the defendant contends, an army may be in the field and its officers and men may be on field duty in the absence of an actual declaration of war, that can only be the case where military operations offensive or defensive are carried on against hostile forces, as in the case of Indian outbreaks and hostilities, the Boxer uprising in China in 1900, and the use of American forces along the Mexican border and in Mexico in 1916 and 1917. In this case there were no hostile forces for plaintiff and the troops with which he served to operate against. The findings show that during the entire period of the stay of the marines in China the most cordial relations existed between them and all factions of the Chinese people. No hostile act was committed against the Marine forces with which plaintiff served or against American citizens living in China during the entire period of plaintiff’s detail in that country. The hostile demonstrations against American citizens and the attacks upon them and their property, to which the defendant refers in the brief, occurred before the arrival of the Third Brigade in China. Even if it be conceded that the roving bands of outlaws and bandits that committed depredations against American citizens and their property prior to the arrival of the Third Brigade in China were enemies, either actual or potential, within the meaning of the Executive order, the plaintiff at no time operated with troops against them. He participated with troops in no military operations of any character, unless the performance of strictly guard and garrison duties, occasional parades, practice on the rifle range, reviews, inspections, etc., constitute such operations. This character of service falls far short of the performance of military operations as that term is commonly understood and as defined by standard authorities. The Marine forces were in China pursuant to the provisions of the treaty of *632 1901. Their mission was a peaceful one and was carried out in a peaceful manner without the firing of a single shot or the performance of a single military movement in the field. The Secretary of the Navy in his report for the year 1927, in speaking of the “ operations ” of the Marine forces during the year said:
“ Disorders in Nicaragua and China necessitated sending brigades of marines to those countries, the Second Brigade to the former and the Third Brigade to the latter. With the exception of a few attacks from outlawed bandits in Nicaragua, which were vigorously and expeditiously repelled, these movements have been carried out peaceably and with noteworthy speed and effect.”
While the Secretary speaks of a few attacks from bandits in Nicaragua he makes no mention of similar attacks in China. There were no such attacks in China and the “ movements ” in that country were carried out “ peaceably ” and with noteworthy speed and effect. In his report of the “ operations ” of the Marine forces during the year 1928, the Secretary said:
“ The Third Brigade, commanded by Brigadier General Butler, is still on duty in China as a protection for American interests. One of the regiments of the brigade, namely, the twelfth, has been disbanded and some of the auxiliary units either disbanded or withdrawn, in order to reduce the size of the force because of the changed conditions. The Fourth Regiment is still stationed at Shanghai, and the remainder of the brigade is at Tientsin.”
These two reports cover the entire period of the plaintiff’s detail in China. General Butler in an official report covering the same period stated:
“ The undersigned having assumed command in Shanghai on March 25,1927, remained in command until he left for the United States on January 15, 1929 * * *. During this period no military operations of any kind were ever taken by any of the troops under his command against the Chinese, not even during the critical period in the first part of June 1928, when it seemed that it would be next to impossible for some of the powers to avoid a clash. Even during this period, the friendliest of relations obtained between the Third Brigade, United States Marines, and the Chinese * * *. *633 These are only a few of many instances which go to prove the entirely peaceful nature of the mission of the Third Brigade in China, and the thoroughly friendly and cordial manner in which that mission has been carried out.”
Unless movements carried out “ peacefully ” and in a “ thoroughly friendly and cordial manner ” constitute operating with troops against an enemy, actual or potential, the plaintiff engaged in no such operations and was on “ field duty ” at no time during his service with troops in China. The fact that the plaintiff was in command of troops prepared for combat and would have gone into action had it become nécessary to do so, as the defendant suggests, is beside the point. The question is not what kind of service the plaintiff would have performed, or was prepared to perform, if conditions had been different from what they were, but what was the character of the service actually performed by him and the troops to which he was attached.
The rule is well established that the construction placed upon a statute by the Executive Department of the Government charged with its administration is entitled to great weight and ought not to be overruled except for cogent reasons, and unless it is clear that such construction is erroneous. In United States v. Moore, 95 U.S. 760, it was said:
“ The construction given to a statute by those charged with the duty of executing it is always entitled to the most respectful consideration and ought not to be overruled without cogent reasons. Edwards v. Darby, 12 Wheat. 210; United States v. State Bank of North Carolina, 6 Pet. 29; United States v. MacDaniel, 7 id. 1. The officers concerned are usually able men and masters of the subject. Not infrequently they are the draftsmen of the laws they are after-wards called upon to interpret.”
In United States v. Johnston, 124 U.S. 236, the rule is stated as follows:
“ In view of the foregoing facts the case comes fairly within the rule often announced by this court, that the contemporaneous construction of a statute by those charged with its execution, especially when it has long prevailed, is entitled to great weight, and should not be disregarded or overturned except for cogent reasons, and unless it be clear that such construction is erroneous.”
*634 The Navy Department, on May 23, 1927, with particular reference to the definition of the term “ field duty ” as contained in the Executive order, ruled and held:
“ This Department is of the opinion that under this definition of the term ‘field duty ’, the service of all the officers in question, who are regularly attached to the expeditionary forces of the Marine Corps in the Republic of Nicaragua, as well as in China, is service, under orders, with troops operating, however, against no enemy, actual or potential.”
The Department has consistently adhered to the foregoing decision. In a letter to' the President, dated January 29, 1929, the Secretary of the Navy stated:
“ After a careful review of this entire matter, the Navy Department sees no reason to change its views as expressed under date of May 23, 1927, that the officers in question then regularly attached to the expeditionary forces of the Marine Corps, in the Republic of Nicaragua, as well as in China, were serving, under orders, with troops operating, however, against no enemy, actual or potential. It may be admitted, however, as an administrative matter, that some of these officers, particularly in the Republic of Nicaragua, may now be found for a portion of their more recent duty there to have been on service approximating in fact to ‘ field duty ’ as that term is commonly understood. * * * ”
The War Department has placed the same construction on the Executive order defining field duty. In answering an inquiry of the Navy Department in reference to the matter the Acting Secretary of War, on June 14,1928, stated:
“In reply you are advised with respect to question (1) that the War Department does not consider that the personnel of the 15th Infantry, U.S. Army, now serving in Tientsin, China, are on field duty, as that term is defined in the Executive order of the President of August 13, 1924, dealing with rental allowances; and with respect to question (2) that several officers of the Army, without dependents, now serving in Tientsin are being paid rental allowance on the basis that Tientsin is their permanent station. So far as known to this Department no disallowance or suspensions have been raised in the accounts of the Army disbursing officer concerned because of these payments.”
After a most careful consideration of the whole case, upon the plaintiff’s motion for a new trial, we are of the opinion *635 that the construction, placed on the Executive order by the Navy Department, as it relates to the plaintiff’s service in China, is correct. In any event it cannot be said that it is clear such construction is erroneous. We therefore hold that the service of the plaintiff in China was service under orders, with troops, operating, however, against no enemy, actual or potential. He was not on field duty and under the law is entitled to the rental allowance claimed. Stewart v. United States, 70 C.Cls. 540, is distinguished from the instant case on the facts.
The plaintiff’s motion for a new trial is therefore allowed, the former judgment set aside, and findings and opinion withdrawn. Judgment is awarded plaintiff in the sum of $480.00. It is so ordered.
Whaley, Judge, and Green, Judge, concur.