ROBINSON v. MUTUAL RESERVE LIFE INS. CO.

SCOVILL v. SAME.

(Circuit Court of Appeals, Second Circuit.    July 17, 1911.)

Nos. 289, 290, 292.

1. INSURANCE (§ 72*)—MUTUAL COMPANIES—DISSOLUTION—DISTRIBUTION OF ASSETS.

Under the laws of New York, a mutual insurance company may create a reserve fund immune against claims of general creditors in the nature

of a trust to be devoted to the payment of "assessments" thus benefiting living members, or to the payment of "death losses," thus benefiting beneficiaries, and persons giving credit to such corporation are chargeable with knowledge that certain parts of its income may be set aside.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 72.*]

2. INSURANCE (§ 72*)—MUTUAL COMPANIES—SOLVENCY—DISTRIBUTION OF ASSETS.

Where, in proceedings involving the distribution of the funds of an insolvent insurance company, a beneficiary intervened "on her own behalf and on behalf of any and all persons similarly situated," and no one else intervened in support of this class who secured an advantageous disposition of their claims, the court would, if it deemed the controversy so complicated and the interests so involved that the claims of such particular beneficiaries would not otherwise have been properly represented, have discretionary power to allow claims for legal services for counsel representing such interests to be paid out of the funds.

[Ed. Note.—For other cases, see Insurance; Dec. Dig. § 72.*]

Noyes, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the Southern District of New York.

Suits by James C. Robinson and by Reuben O. Scovill against the Mutual Reserve Life Insurance Company. Appeal from a final decree distributing the funds of defendant. Affirmed.

This cause comes here upon appeal from final decree distributing the funds of defendant, an insolvent insurance company, among the several claimants. The company is the one which was before the Supreme Court in Polk v. Mutual Reserve Life Insurance Company, 207 U. S. 310, 28 Sup. Ct. 65, 55 L. Ed. 222. The opinions of the Circuit Judge dealing with the questions raised on this appeal are reported in 175 Fed. 624, and 182 Fed. 850.

See, also, 175 Fed. 629.

Sewell T. Tyng and John T. McGovern, for appellants Turley & Turley, Loring, and others.

Charles T. B. Rowe (Frederick A. Card, of counsel), for appellants Carroll and Fitzgerald.

Gilbert E. Roe (Roe & McCombs, of counsel), for appellant Dogge.

Miles M. Dawson, for appellant Campbell.

Van Iderstine & Barker, for appellants Robinson, Whipple, and others.

Thomas Carmody, Atty. Gen., and William A. McQuaid and Robert P. Beyer, Deputy Attys. Gen., for the People.

Wm. Beverly Winslow, for appellees Robinson and Scovill.

John M. Scoble, for appellees Catoe and others.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge. [1] The special master's report has marshaled the facts exhaustively; his report and the two opinions of Judge Ward contain all that it is necessary to say, since we concur fully in the conclusions expressed in the decree. Upon the argument our first impression was rather adverse to the proposition that the reserve fund created by the members of the old association could be made immune as against the claims of general creditors. But

an examination of the various New York authorities which have been cited satisfies us that associations such as this may, if they choose, create just such a trust which shall be devoted to the payment of "assessments," thus benefiting living members, or to the payment of "death losses," thus benefiting beneficiaries. All persons giving credit to such a corporation are chargeable with knowledge that a certain part of its income from assessments may be thus set aside. These authorities further indicate that the question whether or not such a trust has been created is one to be determined in each case from an examination of the Constitutions, by-laws, certificates, etc., of the particular company under consideration. The analysis of these documents in the special master's report fully supports the conclusion that the funds, identifiable as part of the old reserve fund, which have come into the possession of the receiver, are pledged first to pay death claimants under assessment policies. We are not persuaded that by misapplication of funds received from the members who came in after reorganization under the level premium plan, the latter or their beneficiaries have by subrogation acquired any rights against that specific fund; the evidence fails satisfactorily to show such diversions.

As to the claims against the general funds, presented by the death claimants in both classes, the living policy holders, the general creditors, and the state of New York for franchise tax and certain disbursements, we fully concur with the circuit court.

As to the claim for allowances for legal services and disbursements of counsel who represented Christina S. Dogge, we understand the Circuit Court to have refused to make any such allowance solely on the ground of lack of power. Mrs. Dogge was a beneficiary under an assessment policy and was allowed to intervene "on her own behalf and on behalf of any and all other persons similarly situated." No one else intervened in support of this class of claimants, who have secured an advantageous disposition of their claims. It is no doubt true that the services did not increase the assets in the hands of receivers, and it is equally true that, under the authorities, the court cannot require the other claimants of the same class who did not join with Mrs. Dogge and contribute to the expense, to give up part of their claim in order to create a fund to pay for the services, but it does not follow that the court is powerless to compensate, if in its sound judgment compensation is due.

[2] Where a complicated controversy involving many different interests in a fund is before the court, and some particular interest is not so represented that the facts supporting its claim are likely to be fully brought out and properly presented, we know no reason why the court may not assign some competent person to do such work and compensate him, as receivers' counsel are compensated, viz., out of the funds in the hands of receivers. We think it would be unfortunate if the courts did not possess such power, because the receivers necessarily represent so many different interests that they must generally stand neutral, and there will be many occasions where correct conclu-

sions can be reached only after all sides of the controversy have been vigorously presented.

Whether this be such a case or not is a question to be left to the sound discretion of the circuit judge; the affirmance of this decree is not to be taken as foreclosing him from allowing Mrs. Dogge's claim to be again presented him, if he thinks it a proper one to be reconsidered.

NOYES, Circuit Judge (dissenting). A man must be just before he is generous; much more, if his charity begin at home. He may put aside moneys and agree with himself that they shall be used only for particular purposes; but still his creditors may seize them. He may die and leave a will creating funds for many objects; but he cannot thereby defeat the demands of his creditors. That which a man has the right to reserve either for his uses or charities is that which remains after his debts are paid.

A corporation may create special funds for the benefit of its stockholders or members; but it must first meet its obligations to its creditors. The courts have many times said that the assets of a corporation constitute a trust fund for the payment of its debts. [1] And this is true whether the corporation have, or have not, capital stock.

The primary reason why the stockholders or members of an insolvent corporation cannot appropriate its property and leave its debts unpaid is that they, in reality, *are* the corporation. They cannot pay themselves at the expense of their creditors. And this reason is quite as strong and the principle quite as applicable in the case of an insolvent co-operative insurance corporation as in any other case. Manifestly, the assets of such a corporation which the members have the right to divide, are those only which remain after general creditors are paid.

The beneficiaries of deceased members of a co-operative insurance corporation stand in a position similar to that of legatees under a will. They take by and through the member as the legatee takes through the testator, and are subject to the limitations attaching to the member. And while their rights may be vested and they may sue on the policy, they must look, as must the legatee, to the assets remaining after the payment of debts. In one sense they are creditors, but they are not like the general or outside creditors. Their rights are subject to the rules and regulations of the corporation because they take through them. The outside creditors deal with the corporation at arm's length.

It follows then that if the reserve fund in question in this case constitute part of the assets of this insolvent corporation, it must first be applied to the payment of the general creditors. And as such fund was created out of the moneys of the corporation, it does constitute a part of its assets unless in one of two contingencies:

(1) Unless the state of New York which created the corporation

---

[1] However the trust fund doctrine may be regarded all the discussion of it serves to emphasize the proposition that when the affairs of a corporation are being wound up distribution must be made to the creditors before stockholders or members receive anything.

has expressly provided by statute that reserve accumulations of co-operative insurance corporations shall not constitute a part of their assets and shall be free from the charge of their debts;

(2) Unless the reserve fund constituted a valid trust fund.

Now the only New York statute upon the subject to which attention has been directed is the act which provides that nothing in it shall prevent the creation of a reserve fund for the payment of assessments or death losses. Manifestly this statute, considered as a positive grant of authority, falls far short of providing that a reserve fund if created shall not, in respect of general creditors, constitute a part of the assets of the corporation. The statutory provisions are consistent with the creation of a fund for the purpose stated, but subject to the payment of debts.

The reserve fund did not constitute a trust fund because, in the first place, the corporation did not part with dominion over it. The moneys were merely placed in the hands of a custodian and were not altogether kept there. In the second place there was no trust because there was no designated beneficiary. The fund was to be distributed among members or "as the court shall direct." In the third place if there were a trust at all, it was for the benefit of the members of the corporation—in reality the corporation itself—and was, consequently, invalid as to outside creditors.

For these reasons I am of the opinion that, with respect to the general creditors, the reserve fund in question constituted a part of the assets of the corporation to which they had the right to look for the payment of their debts before it could be distributed to the members or their beneficiaries. While I have reached this conclusion merely by applying what would seem to be elementary legal principles, I think that it is not in conflict with, but is rather supported by, the decisions of the New York Court of Appeals which have been referred to.

For the reasons stated in the opinion in Matter of Traders' & Travelers' Accident Co., 68 Misc. Rep. 440, 125 N. Y. Supp. 85, which I approve, I think that the claim of the state of New York is entitled to a preference.

In my opinion the decree of the circuit court should be reversed with respect to the claims of the general creditors and the claim of the state of New York.