PENNSYLVANIA STEEL CO. et al. v. NEW YORK CITY RY. CO. et al.
and three other cases.

(District Court, S. D. New York. February 10, 1915. On Application to Vacate Order, February 11, 1915.)

Nos. 2-9, 2-33, 2-149, 3-37.

1. JUDGES ⬿48—DISQUALIFICATION TO ACT—MOTION TO SET ASIDE HIS OWN ORDERS.

While as a member of an appellate court a judge cannot sit on a review of his own orders, a motion to set aside an order, in the court in which it was entered, on the alleged ground that it was improvidently made, may always be heard by the judge who made it.

[Ed. Note.—For other cases, see Judges, Cent. Dig. §§ 220, 221; Dec. Dig. ⬿48.]

⬿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. JUDGES ⬤⟹29—UNITED STATES CIRCUIT JUDGES—DESIGNATION TO HOLD DISTRICT COURT.**

One of the purposes of section 18 of the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1089 [Comp. St. 1913, § 985]), authorizing the senior Circuit Judge of any circuit, the Circuit Justice, or the Chief Justice, whenever in his judgment the public interest shall require, to designate a Circuit Judge to hold a District Court, was to enable a Circuit Judge who, prior to the abolition of the Circuit Court, had partially heard an equity case therein and made interlocutory orders, through such designation to continue to conduct the cause to final decree, where it was deemed of advantage because of his familiarity with the same; and the fact that under such circumstances a senior Circuit Judge designated himself to hold a District Court in all matters pertaining to a complicated receivership which had previously been entirely conducted before him does not render the designation invalid or improper, where no objection was made by any of the parties in interest.

[Ed. Note.—For other cases, see Judges, Cent. Dig. §§ 140–142, 144–152; Dec. Dig. ⬤⟹29.]

**3. RECEIVERS ⬤⟹96—MANAGEMENT OF ESTATE— APPOINTMENT OF COUNSEL FOR DIFFERENT INTERESTS.**

While the court, in a complicated controversy involving many different interests in a fund in the hands of receivers, has power to appoint, or authorizes the receivers to appoint, counsel to represent an interest whose claims to be paid from the fund might not otherwise be fully presented, there is no occasion for such an appointment after the claims to priority between the different interests have been finally determined, since as to other matters the receivers may competently represent all creditors.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 176–180; Dec. Dig. ⬤⟹96.]

In Equity. Suit by the Pennsylvania Steel Company and another against New York City Railway Company and another, with three other cases. On motions. Denied.

On Applications of Accident Creditors' Fund and Tort Creditors' Committee.

These are eleven separate motions, enumerated in a single notice, which were on the motion calendar of this court January 22, 1915, and adjourned to January 29th, on which latter day the senior Circuit Court judge was hearing the motion calendar.

Benjamin Catchings of New York City, for tort creditors' committee.

R. R. Rogers, of New York City, for New York Rys. Co.

Masten & Nichols, of New York City, for receiver of Metropolitan St. Ry. Co.

O'Brien, Boardman & Platt, of New York City, for contract creditors' committee.

Geller, Rolston & Horan, of New York City, for Farmers' Loan & Trust Co.

Byrne & Cutcheon, of New York City, for Pennsylvania Steel Co.

Dexter, Osborn & Fleming, of New York City, for receiver of New York City Ry. Co.

Davies, Auerbach & Cornell, of New York City, for Guaranty Trust Co.

LACOMBE, Circuit Judge. The motions were noticed by Benjamin S. Catchings, Esq., as solicitor of "Accident Creditors' Fund, a corporation." No such person has heretofore intervened in this proceeding or made any application to be allowed to do so. It has no present standing to notice motions such as these. Mr. Catchings, however, also gave notice on behalf of the "Tort Creditors' Committee," which was long ago recognized in these proceedings. Such notice therefore entitled

him to a hearing as solicitor or counsel for the committee, of which, indeed, he is himself a member.

[1] When the first motion was called for hearing, counsel for the Tort Creditors' Committee raised the objection that the judge then sitting could not hear the motion because it dealt with the question of seting aside orders he had himself made; it being stated that, when a similar motion was made a week before to the Circuit Court of Appeals, he had withdrawn from the bench, stating that he was disqualified to hear it. As member of an appellate court, a judge cannot sit on a review (in whatever form) of his own order. The present motion, however, in the District Court, is directed to the vacation of four orders (one in each of the above causes) made by this same judge and entered in the District Court. A motion to set aside an order, on the alleged ground that it was improvidently made, may always be heard by the judge who made it. It not infrequently happens that some order is made in the District Court, which one party or the other wishes to modify or set aside, and makes a motion so to do. If when that motion appears on the motion calendar, some other judge is hearing that calendar, it is common practice in the District Court to send the parties to the judge who made the order. If they satisfy him that he had made a mistake, he corrects it himself; if they fail to do so, he denies the motion to vacate or modify, and from his refusal appeal may be taken, as it might have been from the original order. The protest now made by the moving party is noted, and his exception to the hearing of the motion is allowed, whereupon he presents his motions, without prejudice to his rights.

[2] The first motion is described in the notice as one "to vacate designation of Hon. E. Henry Lacombe to hold District Court (in these proceedings) to exclusion of all other judges." Incidentally it may be noted that the designation was not exclusive. It merely empowered the Circuit Judge designated in the orders "to hold the District Court in all matters pertaining to above-entitled cause." Since the entry of the orders matters connected with these proceedings have occasionally come before one or other of the District Judges and been by them disposed of.

The four orders (one in each suit) which it is sought to vacate were made in conformity with the provisions of the Judicial Code:

"Sec. 18. Whenever, in the judgment of the senior Circuit Judge of the circuit in which the district lies, or of the Circuit Justice assigned to such circuit, or of the Chief Justice, the public interest shall require, the said Judge, or Associate Justice, or Chief Justice, shall designate and appoint any Circuit Judge of the circuit to hold said District Court."

This provision for designation of a Circuit Judge was not in the original bill. It was inserted, while said bill was under consideration in Congress, on application of the United States attorney for the Southern district of New York. Attention was called to the fact that, on whatever day the existence of the Circuit Court should terminate and its business be transferred to the District Court, there would probably be found on the equity side of court suits which had been in part tried and disposed of by interlocutory decrees or decretal orders before some

Circuit Judge, but in which his work had not yet been terminated by final decree. It was suggested that in such cases it would be better, involving less delay, if the Circuit Judge were allowed to finish his incomplete work, rather than to require a District Judge to take up the unfinished cause and familiarize himself with its prior history. It was also suggested that, at least in this district, there would sometimes be occasions when the business of the court, increased as it was by old Circuit Court work, part of which had been theretofore done by Circuit Judges, might be so great that the District Judges could not promptly dispose of it, while at the same time some of the Circuit Judges might be able to spare time from the work of the Circuit Court of Appeals. These suggestions apparently commended themselves to Congress, for the bill was amended so as to include the provision above quoted.

The old Circuit Court ceased to exist December 31, 1911. As had been expected, at that time there were, besides those above entitled, some causes in the Southern district of New York and one or more in Connecticut which had been theretofore conducted each before a single Circuit Judge, and which had been well-progressed towards conclusion, but not yet completed. In each of these an order was made by the senior Circuit Judge, designating the particular Circuit Judge who had had it in charge to finish the cause. A like condition existed in this street surface railroad receivership. All prior proceedings had been had before the senior Circuit Judge. Many decrees and decretal orders had been made, which had been reviewed by the Circuit Court of Appeals. Very many claims had been liquidated. On December 31, 1911, at midnight the property which receivers had operated was turned over to purchaser at foreclosure sale. Further liquidations and accountings remained to be disposed of. The situation was like that in the other unfinished causes, and designation of the Circuit Judge was as desirable in the one case as in the others. The circumstance that, since he was the senior Circuit Judge, he would thereby designate himself seemed unimportant. There was no selection involved in the appointment, that was determined by the condition of the causes, and it seemed unnecessary to trouble the Circuit Justice or the Chief Justice of the United States with a mere detail of local administration. Had any one at the time advanced this technical objection, an order of designation with a statement of the situation could have been presented to one or other of them. But no one objected, the proceedings have gone on as usual for three years, much has been done, and the end of the voluminous and complicated proceeding is now in sight.

The notice of motion is accompanied by a statement of grounds on which it is asked that the orders of designation be vacated or the designation revoked. The proposition that the senior Circuit Judge could not designate himself in a case where conditions were such that designation should be made has been already considered. The suggestion that a Circuit Judge should not sit in a District Court, because appeal from his decision will come before his associates in the Court of Appeals, is sufficiently disposed of by section 18, supra, and by a reference to the debates on the Judicial Code. One objection seems to be that, when a single judge has sat for a long time in the disposal of the

varying questions which arise in some extended proceeding such as a receivership, and has made numerous orders and decrees therein, he has formed and expressed opinions about questions which have been presented, and will be likely to conform his decision of future questions to the ideas of the law and practice he has already expressed. On behalf of other claimants, or parties to the record, without exception counsel appeared and opposed the motion, as calculated merely to delay the final termination of this very complicated controversy. In this connection it may be noted that since the very commencement of these proceedings the Court of Appeals has heard and disposed of very many of the questions which have from time to time arisen, by affirmance, by reversal, or by modification of the orders and decrees of the Circuit (and, since January 1, 1912, of the District) Court. No technical construction of the words "final order" has operated to deprive any dissatisfied party of a prompt review by the Court of Appeals. It has handed down opinions in over 30 appeals, some of them exhaustively discussing all questions presented for review.

The next objection is that the "validity of the original appointment (of Judge Lacombe) is uncertain." It may be gathered, however, even from the moving papers that the original appointment was made while Congress was not in session. After it assembled in December, 1887, and the Senate took up the subject of confirmation, it objected to confirming a so-called ad interim appointment, whereupon the old appointment was withdrawn, and a new one, made while Congress was in session, was confirmed by the Senate February 28, 1888.

The further objection that recent legislation abolishing the Circuit Courts has practically deprived all the Circuit Judges of the right to hold any court is not found persuasive.

The motion to set aside the orders or to vacate the designation therein made is denied.

The second motion is "to dismiss the petition of the Guaranty Trust Company, verified January 15, 1915." It was argued with the motion on such petition, and both will be disposed of in a separate memorandum.

The third motion is to require the receiver of Metropolitan Street Railway to file certain accounts. The fifth motion is to vacate a so-called "omnibus" petition of said receiver. These were argued at the same time as the motion on the "omnibus" petition, to which they were germane. All will be disposed of in separate memorandum.

The fourth motion is to instruct the New York City receiver to "pay and carry in suspense a sufficient amount to enable the Tort Creditors' Committee to continue its work of assisting and defending the rights of accident creditors as a class," or in the alternative "that the receiver employ separate counsel to represent him in so far as he is charged with the duty of representing the said creditors and all creditors whose claims were entitled under the creditors' bill to participate in the benefits thereof as of September 24, 1907." There is also a motion, made some little while ago and held up to await the presentation of these later motions, in which it is asked that "an advance payment of not less than $5,000 on account of the services and disbursements of

the Tort Creditors' Committee be now paid by New York City Railway receiver, and that such payment be carried in suspense to be ultimately charged against the distributive share of tort creditors as a class, or any of them, or otherwise as the court may ultimately direct." All these motions may be disposed of all together.

The Tort Creditors' Committee was appointed by a number of owners of claims for damages for personal injuries which have been allowed by the special master (no one disputing the propriety of such allowance) against the estate of the New York City Railway Company. These claimants have been held to rank with other unsecured creditors, and it is the general expectation that upon final distribution of that estate, after payment of all claims entitled to priority, there will be enough left to pay some dividend to each unsecured creditor. Where any such creditor has retained counsel to represent him, and such counsel has appeared and rendered services, reasonable compensation therefor would be due from client to counsel, and upon the amount of such creditor's dividend counsel would have a lien for such compensation. The court in which the proceedings had been conducted would also, in the event of controversy between client and counsel, determine the amount of such reasonable compensation. The same results will follow where many creditors of the same class have united in the prosecution of their claims and through a committee of their own appointment have selected a counsel to represent them collectively.

If the situation now were such as is indicated above, there might be no objection to advancing a proper sum on account of the amount which will ultimately be received in the way of dividends by the group of claimants who selected the committee (or agreed to the selection) and retained solicitor and counsel. But it is not now certain that such is the situation. How many of these tort claimants originally agreed to be represented by committee nowhere appears. It has always been assumed that they were considerable in number and amount. But it was stated on the argument, and the same is set forth in one or more of the answers, that all of those who agreed to such representation accepted the offer made by the reorganization committee, assigned their claims, and were treated on reorganization as if they were holders of first mortgage bonds of the Metropolitan Company, even though in law their claims were provable only against the New York City Company. They received their new securities, which were salable at amounts equivalent to a large percentage of their liquidated claims. Of course, none of these persons are any longer claimants against the estate in receivers' hands; no dividend will be paid to them, since they have already been paid. It is uncertain, therefore, whether there are any claimants (whose claims have been allowed) who have agreed that this committee, its solicitor, or counsel should represent them. In the absence of proof that there are such claimants now of their own volition represented by this committee and its counsel, it would not be safe to make any advance payment. The question whether deductions can be made for committee and counsel from the dividends of those claimants who never agreed

to the employment cannot be decided until such claimants can be heard, and that time presumably will not come till their dividends are declared and they appear to ask such dividends be paid.

Since the argument of the motion some lists of names have been filed, purporting to be those of claimants, who have not assigned their claims and accepted reorganization securities, and who are now in agreement that the committee, its solicitor and counsel should appear in their behalf. If there is any money to be now paid—in the language of the motion, "as an advance—to be ultimately charged against the distributive share" of these tort creditors, it should first be ascertained in some way that these creditors assent to such payment as one properly to be charged ultimately against their distributive shares.

From what was said in argument on the motion made prior to these 11 motions, it would seem that a payment on account to committee for its counsel is to be made on another theory. Reference was made to an opinion of the Circuit Court of Appeals for this circuit (Robinson v. Mutual Reserve Life Insurance Co., 189 Fed. 347, 111 C. C. A. 79), where the court said:

"Where a complicated controversy involving many different interests in a fund is before the court, and some particular interest is not so represented that the facts supporting its claim are likely to be fully brought out and properly presented, we know no reason why the court may not assign some competent person to do such work, and compensate him as receivers' counsel are compensated, viz., out of the funds in the hands of receivers. We think it would be unfortunate if the courts did not possess such power, because the receivers necessarily represent so many different interests that they must generally stand neutral, and there will be many occasions where correct conclusions can be reached only after all sides of the controversy have been vigorously presented."

In the early stages of these receiverships, it may be urged that the situation was such as that referred to in the quotation, and that committee and counsel for the original group of tort creditors, above referred to, should be awarded an allowance for services out of the general funds as an expense of administration. But applications for such special allowances are to be passed upon at the conclusion of the whole case. Then only can it be determined whether the services, considered as a whole, have or have not been generally helpful towards an equitable and expeditious disposition of the proceedings. It would not be safe to make an advance against some such expected allowance, unless there were assurance that, should such allowance not be made or finally approved, the amount of the advance could be charged against the dividends of claimants. Speaking for myself personally, I would state that, if the question of special allowances of this sort were before me to-day as part of a final decree, I should be inclined to make such allowance from the general funds of the estate. But whether or not I shall be sitting in this court, when those questions come up for determination, no man can tell. It cannot be safely assumed that on some unknown day in the future the particular allowance asked for will be made.

[3] As to the alternative prayer that the City Railway receiver employ separate counsel to represent accident creditors or tort creditors, as they are indifferently referred to: This suggestion is evidently

in view of the expression of opinion above quoted from Robinson v. Mutual Reserve Company. The receiver of each estate represents *all* the creditors. While all have a like interest in preserving and increasing the estate to which they look for payment of their claims, in whole or in part, different groups of creditors sometimes have interests opposed to those of other groups. When these proceedings began, certain creditors who had rendered services to the corporation, or had furnished it with materials or supplies, contended that they were entitled to priority in payment over general creditors. Tort creditors also contended that *they* were entitled to priority of payment over general creditors. Both groups contended that one or more of the general creditors should be deferred in payment till others were paid. While these disputes inter sese were under advisement, it was desirable that each group should be represented by its own counsel. Thus we have had a Contract Creditors' Committee and a Tort Creditors' Committee. It is understood, however, that all questions of priority of payment have been disposed of by decisions of the Court of Appeals. Some of the contract creditors were found entitled to payment out of a special fund which was sufficient to pay them in full; others were held entitled to priority in payment; all others were held to be merely general creditors, in which category the tort creditors were classified. Henceforth the interest of contract creditors (other than those who were found entitled to priority) and tort creditors is the same, to reduce claims against the general fund advanced by creditors of another sort; e. g., for rent, breach of covenant, for waste, for deficiencies on foreclosure, etc. With a Contract Creditors' Committee appearing by able and experienced counsel, it seems unnecessary for the receiver to employ special counsel to present the same arguments in behalf of tort creditors.

The motion is denied, without prejudice to renewal when it is shown how many claimants in number and amount are now agreed that this committee and counsel should represent them.

The sixth motion is to confirm a report of the special master, dated January 25, 1915, in re claim of Guaranty Trust Company. The seventh motion is to confirm a like report of the same date in re a claim of Farmers' Loan & Trust Company. The eighth motion is directed to the same reports.

The time to file exceptions to these reports has not expired. When the reports come up regularly for confirmation, the present applications may be considered. They are now premature.

The ninth motion is to instruct the receivers to collect the sum agreed to be paid into court by the purchaser at foreclosure sales. It is premature. Until some proceedings yet undisposed of, referred to in the "omnibus" proceeding, are disposed of, it cannot be known how much of the total sum the purchaser should pay.

The tenth motion is to vacate the order of December 29, 1914, in re Breach of Lease claim of Metropolitan road. Reference may be had to the opinion filed on that claim. As the solicitor of this committee filed no exceptions to the special master's report and presented

no argument against its confirmation, it was not necessary to give him notice of settlement of the terms of the order.

The eleventh motion is to permit the filing nunc pro tunc of exceptions by Tort Creditors' Committee to the special master's report on Metropolitan's claim for breach of lease. The excuse for not doing so—temporary absence—might be good enough, if it had been promptly presented. It comes too late when offered months after the case was heard and decided.

Motion denied.

### On Application to Vacate the Order of December 29, 1914, in the Matter of the Claim of Metropolitan Street Railway Company for Breach of Lease.

The day before memorandum was filed (February 10th), disposing of the 11 motions made by Tort Creditors' Committee, a statement was filed on its behalf, which the court did not understand referred to the tenth motion. As it seems, however, to suggest the grounds for that application, viz., to vacate the order allowing the receivers of Metropolitan estate to file claim for breach of lease, nunc pro tunc, some reference should be made to it.

Apparently the application is made on the theory that, in making the order allowing that claim to be filed, some special favor was accorded, to the detriment of the tort creditors. The facts do not support this contention. The final date for filing claims was fixed originally as December 10, 1907. For a long time thereafter belated claimants appeared, and whenever any reasonable excuse was offered for their delay such claims were ordered filed nunc pro tunc as of the original date. When over two years had elapsed, it was thought that something should be done to end this filing of claims. Therefore on January 12, 1910, the City receiver was instructed to give notice that after March 1, 1910, no more nunc pro tunc orders of that sort would be made. This notice was not only advertised in the usual way, but also in the various newspapers in this city which were published in foreign languages. To the publisher of each of such newspapers a letter was sent, suggesting that it would be a kindly act if his paper should in its news columns make some reference to the advertisement, as some of the belated claimants were possibly foreigners, who did not read newspapers other than those printed in their own language. In consequence a number of tort claims were filed, and also several other claims. The Third Avenue Railroad Company, the Union Railway Company, the Forty-Second, etc., Railway Company, the Dry Dock Railway Company, Montague, as receiver, the Central Park North & East Railway Company, the Mercantile Trust Company, the Equitable Life Assurance Society, the Metropolitan Securities Company, the Second Avenue Railway Company, Hemphill et al., and the Central Crosstown Railway Company all filed claims in January and February, 1910. This claim of the Metropolitan for breach of lease was filed February 28, 1910. No special order of allowance was then made. Counsel apparently assumed that it was properly filable under the order of January 12,

1910. In that assumption he was probably correct; but later, when the claim was taken up before the master, suggestion was made that an order specifically making the filing nunc pro tunc as of the original date of filing claims should be made. This was done, although it seemed unnecessary. The important circumstance is that the claim itself was actually filed, as it should have been, on February 28th, the day when several tort claims were also filed.

If the present contention is that the court should have allowed tort creditors to file claims as late as February 28, 1910, but should have refused the same relief to all other creditors, it does not commend itself to a court of equity. Since March 1, 1910, the trustees under the two mortgages have been allowed to file claims; but those claims are for deficiencies on foreclosure, and, of course, could not have been filed until it was known whether there would be any deficiency. This could not be known, until confirmation of the sale in foreclosure—late in 1911.

An order nunc pro tunc was also made subsequent to March 1, 1910, allowing the Waterbury Committee to file a claim; but it was expressly stated in the memorandum accompanying the order that this was no new claim, but merely an assertion of some special interest in a claim already filed.

Counsel for Tort Creditors' Committee knew of the order in reference to Metropolitan claim for breach of lease when it was made. He did not appeal from it, although other orders, some allowing and others disallowing the filing of claims nunc pro tunc, have from time to time been brought before the Court of Appeals. He appeared in this court when the special master's report on the claim was being reviewed, but raised no such objection as that now presented.

When receivers were appointed October 1, 1907, they took over the lease referred to as part of the estate of the Metropolitan Street Railway Company. The claim in question is for damages sustained by that estate for breaches of said lease.

No ground for vacating the nunc pro tunc order appeared, and the motion was therefore denied.