SWEET v. ALL PACKAGE GROCERY STORES CO.

(Circuit Court of Appeals, Second Circuit.   December 12, 1919.)

No. 63.

CORPORATIONS ⬅️688—CLAIM OF STATE FOR LICENSE TAX ON PROPERTY OF
FOREIGN CORPORATION PRIOR LIEN.

    Claim of the state of New York for license tax imposed on a foreign
corporation doing business in the state under Tax Law, § 181, as amend-
ed by Laws N. Y. 1917, c. 490, *held* entitled to priority of payment over
general creditors from assets of the corporation in the hands of re-
ceivers of a federal court in New York, although the state had not, by
levy, acquired a lien on the property prior to the receivership.

    Hough, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the South-
ern District of New York.

Suit in equity by William L. Sweet, Jr., against the All Package
Grocery Stores Company. From a decree denying priority to its claim
for license taxes, the State of New York appeals. Reversed.

Charles D. Newton, Atty. Gen. (Robert P. Beyer, of New York City,
of counsel), for the People of the State of New York.

Gilbert & Gilbert, of New York City (A. S. Gilbert and Francis Gil-
bert, both of New York City, of counsel), for appellee.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

WARD, Circuit Judge. The state of New York has presented in
this equity receivership claims against the All Package Grocery Stores
Company, a corporation of the state of New Jersey, as follows:

"For license fee or tax stated against All Package Grocery Stores Company,
a New Jersey corporation, the predecessor of defendant, for the privilege of
exercising its corporate franchises and carrying on business within the state
of New York based on the amount of capital stock employed in New York
state, $977.86.

"For license fee or tax heretofore stated against the defendant for the
privilege of exercising its corporate franchise and carrying on business with-
in the state of New York, $22,517.86."

Section 181 of the Tax Law (Consol. Laws, c. 60) of the state of
New York was amended by chapter 490, Laws 1917, entitled "An
act to amend the tax law in relation to the license tax on foreign cor-
porations," the material provisions being:

"Sec. 181. *License Tax on Foreign Corporations.*—Every foreign corpora-
tion, except banking corporations, fire, marine, casualty and life insurance
companies, co-operative fraternal insurance companies, and building and loan
associations, doing business in this state, shall pay to the state treasurer, for
the use of the state, a license fee of one-eighth of one per centum for the
privilege of exercising its corporate franchises or carrying on its business in
such corporate or organized capacity in this state, to be computed upon the
basis of the capital stock employed by it within this state, during the first
year of carrying on its business in this state; which first payment shall not
be less than ten dollars. * * * The amount of capital upon which such
license fees shall be paid shall be fixed by the state tax commission, which
shall have the same authority to examine the books and records in this state
of such foreign corporations, and the employés thereof as it has in the case of

domestic corporations and the comptroller shall have the same power to issue his warrant for the collection of such license fees, as he now has with regard to domestic corporations."

The remedy which the comptroller had to collect taxes from domestic corporations was provided by section 201, the relevant part of which is as follows:

"Sec. 201. * * * The comptroller may issue a warrant under his hand and official seal, directed to the sheriff of any county of the state, commanding him to levy upon and sell the real and personal property of the person, partnership, company, association or corporation against which such account is stated, found within his county for the payment of the amount thereof with interest thereon and costs of executing the warrant, and to return such warrant to the comptroller and pay to the state treasurer the money collected by virtue thereof, by a time to be therein specified, not less than sixty days from the date of the warrant. Such warrant shall be a lien upon and shall bind the real and personal property of the person, partnership, company, association or corporation against which it is issued, from the time an actual levy shall be made by virtue thereof."

It is contended that this license fee is not a tax, but a conventional agreement between the state and foreign corporations, whereby they contract to pay a fee in consideration of the privilege of doing business in the state. But we think it quite clear that the license fee is a tax. It is provided for in the state Tax Law, described as a license tax in the title of the amending act, called a license tax in the description of section 181 and is fixed by the state tax commission.

The Court of Appeals of New York in Wise v. Wise Co., 153 N. Y. 507, 47 N. E. 788, referring, among other cases, to two earlier decisions of In re Columbian Ins. Co. (N. Y.) 3 Abb. Dec. 239, and Central Trust Co. v. N. Y. C. & N. R. R. Co., 110 N. Y. 250, 18 N. E. 92, 1 L. R. A. 260, said:

"The contention of the learned counsel for the receiver of taxes rests upon a somewhat novel proposition. It is that from the most ancient times the courts of England have recognized the right of the sovereign, representing the state, to priority of payment over all other claims, though they may have been secured by specific liens; that the people of this state have succeeded to all the prerogatives of the British crown' as parts of the common law suitable and applicable to our condition. * * * The general doctrines contained 'in these cases would seem, upon a superficial view, to go far in support of the contention upon which this appeal is based, although it should be observed that a very important fact present in this case was absent in the cases cited, and that was the existence of a specific lien at law upon the personal property acquired by a levy under valid legal process in the hands of the sheriff.

"On a closer examination, however. it will be found that they do not sustain the broad principle contended for. They undoubtedly go far enough to sustain the principle that, when a fund is in the hands of the court or the trustee of an insolvent person or corporation, a claim due to the government upon a debt or for taxes is entitled to a preference in certain cases, or under certain circumstances. * * * In this country the right of the government to be preferred in the distribution of such a fund exists, under the authorities, in two cases: (1) Where the preference is expressly given by statute, as was the case in U. S. v. State Bank of North Carolina, supra, 6 Pet. 29, 34 [8 L. Ed. 308]. (2) Where, before the fund has come to the hands of the receiver or trustee, a warrant or some other legal process has been issued for the collection of the tax or debt, and the fund has come to his hands impressed with a lien in favor of the government in consequence of the proceedings for col-

lection, as was the case in the Columbian Ins. Co. Receivership [N. Y.], 3 Abb. Dec. 239."

In Robinson v. Mutual Reserve Co. (C. C.) 175 Fed. 624, affirmed 189 Fed. 347, 111 C. C. A. 79, we held that the state was not entitled to any preference over general creditors on its claim for taxes when the statutory lien did not arise until after receivers had been appointed and no warrant or other legal process for collection had been issued before their appointment. This was in strict accordance with the test laid down in Wise v. Wise, supra, as to the state's right of preference. In Central Trust Co. v. Third Avenue R. R. Co., 186 Fed. 293, 110 C. C. A. 1, though a lien was given for taxes which came into effect before the appointment of the receivers, we construed the statute as not giving the lien any preference over prior debts specifically secured by lien. Subsequently the Appellate Division of the First Department in Matter of Carnegie Trust Co., 151 App. Div. 606, 136 N. Y. Supp. 466, affirmed 206 N. Y. 390, 99 N. E. 1096, 46 L. R. A. (N. S.) 260, decided that the state as sovereign is entitled to priority of payment for taxes and any other debts, whether such priority is given by statute or not, over unsecured creditors, just as the crown was at common law.

In this case the District Judge held that this priority as confirmed by the highest court of New York was a matter of procedure only. We think it was a matter of substantive right, being a part of the common law adopted by the state Constitution of 1777 as the law of the state of New York. Following this decision, therefore, we now hold that the state's claim for license tax, though not given a lien by statute (except from the time of the actual levy of a warrant for collection issued by the comptroller), is entitled to priority of payment over general creditors.

It is further contended that the prerogative of the state of New York does not exist as against a corporation of the state of New Jersey, with which the state of New York is not in the relation sovereign. But the state is a sovereign as to all persons and things within its own boundaries and as to the property of the defendant corporation in the hands of the receivers here the prerogative clearly exists.

Decree reversed.

HOUGH, Circuit Judge (dissenting). The majority decision does not enforce a specific lien securing either a tax or any other demand; it does recognize a right in the state of New York to preference and priority in the payment of debts over other creditors, by virtue of its sovereignty.

Sovereignty over what? Certainly not over the insolvent corporation, which is of another state, and not over this court (as I suppose), but over the corporate property, because it is physically situated in New York. In other words, when, as here, the state has no lien affecting its debtor's res, its sovereignty is brought forward to operate in rem.

The doctrine, when not imposed by a modern statute, is a trifle archaic, yet perhaps well enough in a court of New York, which is subject in personam (so to speak) to the same sovereignty. But, so far

as New York is concerned, the property of the All Package Company might just as well be in the custody of a court of California, or of Canada, as where it is.

Goods in custodia the District Court of the United States cannot be reached by any process of the state in which that court is sitting; legally they are as remote as if in foreign parts, and the physical situation could only affect legal rights, if the legal custodian were bound by foreign law—in this instance, the law of New York. In matters such as this, it is not so bound by either comity, statute, or constitutional obligation. The majority judgment can only rest on a belief that the court is affected by the sovereignty aforesaid.

This I deny, and therefore dissent.