### In re E. J. HIBNER OIL CO.

### CENTRAL TRUST CO. OF ILLINOIS v. HINES, Director General of Railroads.

(Circuit Court of Appeals, Seventh Circuit. January 20, 1920. Rehearing Denied May 4, 1920.)

Nos. 2731, 2740.

Bankruptcy ☞349—Unpaid freight charges for shipments during federal control entitled to priority.

   Under Federal Control Act, § 12 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115¾l), declaring moneys derived from the operation of the railroads the property of the United States, and providing that at such periods as the President may direct the books shall be closed and the balance covered into the treasury to the credit of the revolving fund thereby created, unpaid freight charges on shipments made during the period of federal control are the property of the United States, and the claim therefor is entitled to priority in bankruptcy under Bankruptcy Act, § 64b (Comp. St. § 9648), and Rev. St. § 3466 (Comp. St. § 6372).

Petition to Review and Revise Order of, and Appeal from, the District Court of the United States for the Eastern Division of Northern District of Illinois.

In the matter of the E. J. Hibner Oil Company, bankrupt; the Central Trust Company of Illinois, trustee. The claim of Walker D. Hines, Director General of Railroads, operating the New York Central Railroad, was awarded priority, and the trustee appeals and brings a petition to review and revise the order. Affirmed.

Edward R. Tiedebohl, of Chicago, Ill., for petitioner and appellant.
F. W. Flott, of Chicago, Ill., for respondent and appellee.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ALSCHULER, Circuit Judge. The claim is by the United States for unpaid freight charges due from bankrupt on oil shipments made in August, 1918, over the New York Central Railroad, which was then being operated under federal control. The only question before us is as to the propriety of the order of the District Court according the claim priority in payment over bankrupt's general creditors.

If the claim is property of, and constitutes a debt due to, the United States, then concededly its priority was properly found. Rev. Stat. U. S. § 3466 (Comp. St. § 6372); U. S. Bankruptcy Act, § 64b (Comp. St. § 9648). Section 12, c. 25, of the Act of Congress of March 21, 1918 (40 Stat. 451 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115¾*l*]), known as the "Federal Control Act," provides:

"Moneys and other property derived from the operation of the carriers during federal control are hereby declared to be the property of the United States. Unless otherwise directed by the President, such moneys shall not be covered into the Treasury, but such moneys and property shall remain in the custody of the same officers, and the accounting thereof shall be in the same manner and form as before federal control. * * *

"At such periods as the President may direct, the books shall be closed and the balance of revenues over disbursements shall be covered into the Treasury of the United States to the credit of the revolving fund created by this act. If such revenues are insufficient to meet such disbursements, the deficit shall be paid out of such revolving fund in such manner as the President may direct."

The "revolving fund" referred to is the $500,000,000 appropriated by the same act (section 6, c. 25 [section 3115¾f]) for paying just compensation to railroad companies, and for maintenance and betterments as therein specified.

It is contended for the trustee that under correct interpretation of the act—

"uncollected transportation charges constitute a debt between the carrier and the bankrupt, and that when these charges are actually paid into the carrier, and when the books of the carrier have been closed and a balance struck and a surplus found to exist, that then, and not till then, is the money [surplus] the property of the United States."

This is clearly a misapprehension of the scope of the act, and particularly of the section quoted. The provisions respecting custody of moneys, and closing of books and turning over of moneys to the United States Treasury, bear no relation to, and do not limit, that part which unqualifiedly declares the ownership of the moneys and other property derived from operation of the carriers to be in the United States. The plain language of the act cannot be departed from, and must be given its manifestly intended effect. This claim for freight charges is "property" derived from operation of the carrier during federal control, and is thus property of, and therefore a debt due to, the United States. As such it was entitled to the priority as found.

The order of the District Court is affirmed.