### DAVIS, Director General of Railroads, v. PULLEN et al.

(Circuit Court of Appeals, First Circuit. January 6, 1922.)

No. 1527.

1. **Receivers** ⟨⟩152—Claims for freight charges held "debts due United States," within priority statute.

Claims for the freight charges on goods transported between January 1 and March 21, 1918, by railroads taken over by the government, are "debts due the United States," within Rev. St. § 3466 (Comp. St. § 6372), relative to priority in the payment of such debts, since the government took over the roads as going concerns, including sums due and daily becoming due for transportation furnished.

2. **Receivers** ⟨⟩152—Entitled to priority when receiver appointed for corporation afterwards found to be insolvent.

Where a receiver was appointed for a corporation on a creditors' bill, alleging solvency, but temporary embarrassment, and the corporation was subsequently found to be insolvent, and was in process of liquidation, debts due the United States were entitled to priority under Rev. St. § 3466 (Comp. St. § 6372), providing for such priority when the debtor is insolvent, and providing that such priority shall extend to voluntary assignments, etc., as well as to cases in which an act of bankruptcy is committed, as this statute, first passed when there was no Bankruptcy Act, cannot be limited to cases of technical statutory bankruptcy under the act of 1898 (Comp. St. §§ 9585–9656).

3. **Receivers** ⟨⟩152—Priority statute applies to all debts due the United States.

Rev. St. § 3466 (Comp. St. § 6372), providing that in case of insolvency of one indebted to the United States, debts due the United States shall be first satisfied, applies to all debts due the United States, including debts becoming due the United States in connection with the operation of railroads, however unjust it may be to give the United States superior rights

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

over other creditors when engaged in an industrial and commercial venture.

Appeal from the District Court of the United States for the District of Massachusetts; Charles F. Johnson, Judge.

Creditors' bill, in which a receiver was appointed for the D'Arcy & Sons Company, and in which James C. Davis, Director General of Railroads, sought to have his claims given priority, which was opposed by William L. Pullen, receiver, and others. From an adverse decree, the Director General appeals. Reversed and remanded.

Arthur W. Blackman, of Boston, Mass., for appellant.

H. C. Dunbar, of Boston, Mass., for appellee.

Before BINGHAM and ANDERSON, Circuit Judges, and BROWN, District Judge.

ANDERSON, Circuit Judge. On April 29, 1918, on a so-called creditors' bill, alleging solvency, but temporary embarrassment, a receiver was, with the defendant's assent, appointed to take possession of the assets of the D'Arcy & Sons Company, with general power to carry on the business as a going concern until further order of the court. The bill, although alleging solvency, prayed that the debts might be established and be ordered "to be paid out of the assets of the respondent corporation, or that the assets of the respondent corporation may be equitably applied as the court may direct in satisfaction thereof."

As usual, the attempt through an equity receivership to save the business as a going concern failed; liquidation was found necessary, and certain disputed claims referred to a master. The master found the corporation indebted in the aggregate amount of about $1,400 (details are not here important) for freight transportation furnished on the New York, New Haven & Hartford Railroad, Boston & Albany Railroad, and Boston & Maine Railroad. These claims all, except for a negligible amount, arose between January 1 and March 21, 1918.

The Director General of Railroads contended that these claims were entitled to priority under R. S. § 3466 (Comp. St. § 6372), as debts due the United States.

The master ruled that they were debts due the United States, that the appointment of a receiver did not constitute an act of bankruptcy, and that therefore these claims were not debts due the United States from an insolvent person within the meaning of section 3466. He also found that when the bill was filed, the respondent corporation was and at all times subsequent thereto had been insolvent, in that the aggregate of its property at a fair valuation was not sufficient to pay its debts; that neither the complainant nor the respondent, when the bill was filed, knew that the corporation was insolvent, but believed it to be solvent; and that the receiver was not appointed because of the insolvency of the respondent corporation.

The District Court confirmed both rulings—that the claims constituted debts due the United States, and that they were not entitled to priority.

The case comes here on the appeal of the Director General, contending that the court below erred: (1) In confirming the master's report; (2) in ruling that the defendant had committed no act of bankruptcy; and (3) in denying priority.

[1] 1. It may be doubted whether such assignments of error bring here the ruling as to these claims being debts due the United States. But both counsel have argued the case on the theory that that question is properly here. Under such circumstances, we may as well say that we have no doubt that that ruling of the District Court was correct. In that respect we accord with the view of the Circuit Court of Appeals for the Seventh Circuit in In re Hibner Oil Co., 264 Fed. 667, 14 A. L. R. 629. See also Northern Pacific R. R. v. North Dakota, 250 U. S. 135, 39 Sup. Ct. 502, 63 L. Ed. 897, where the statutes and proclamations as to federal control of railroads are in large part set forth. Missouri Pacific R. Co. v. Ault, 256 U. S. ——, 41 Sup. Ct. 593, 65 L. Ed. ——.

It seems to us plain that when, in the exercise of the war powers, the government found it necessary to take over the railroads as transportation systems, they were taken over as going concerns, including, of course, sums due and daily becoming due for transportation furnished, as well as the cash and other quick assets absolutely essential for daily use in carrying on an enormous business for the war. Without such quick assets as working capital, until Congress had legislated and provided a revolving fund with an appropriation of $500,-000,000, it would have been almost impossible for the President to have operated the railroads as a going business. Compare Northern Pacific Ry. v. North Dakota, 250 U. S. 135, 148, 39 Sup. Ct. 502, 63 L. Ed. 897; United States v. Kambeitz (D. C.) 256 Fed. 247; Haubert v. B. & O. R. (D. C.) 259 Fed. 361; Biscoe v. Tax Com., 236 Mass. 201, 128 N. E. 16.

[2] 2. A more difficult question is whether the District Court, affirming the master, was correct in holding that these claims, though debts of the United States, were not entitled to priority, because the present proceeding is not a bankruptcy or insolvency proceeding within the meaning of section 3466, which is as follows:

"Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority hereby established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

In effect, the District Court held that, as such appointment of a receiver was not an act of bankruptcy within the meaning of the Bankruptcy Act of 1898, being Comp. St. §§ 9585–9656 (In re William S. Butler & Co., Inc., 207 Fed. 705, 125 C. C. A. 223), the priority statute was not applicable.

In support of this contention, reliance is placed on such cases as Prince v. Bartlett, 8 Cranch, 431, 3 L. Ed. 614, the headnote of which reads:

"In case of insolvency, the United States are not entitled to priority of payment, unless the insolvency be a legal and known insolvency, manifested by some notorious act of the debtor, pursuant to law."

The same general proposition is more elaborately stated by Chief Justice Shaw in Commonwealth v. Phoenix Bank, 11 Metc. (Mass.) 129, 151:

"It is established by a series of authorities that insolvency alone, incapacity to pay all the debts which the debtor owes, is but one circumstance only to bring the case within the statute. It must be insolvency, accompanied with the circumstance that there has been a general assignment by the voluntary act of the debtor, or a legal bankruptcy or insolvency. It is not sufficient that a debtor is incapable of paying his debts, and that the winding up of his affairs is effected, in whole or in part, by legal proceedings. Under the attachment laws of Massachusetts, the whole of a debtor's property might be attached at the suits of various creditors, and be insufficient to satisfy all his debts. It might be sold and converted into money, in a course of legal proceedings, by the sheriff, and the whole of the money, thus in the custody of the law, be paid out to creditors, and yet the United States can assert no priority."

In Beaston v. Bank, 12 Pet. 102, 9 L. Ed. 1017, decided in 1838, it was held that a prior attachment by a private creditor could not be defeated by a subsequent attachment by the United States. The court said:

"From the language employed in this section, and the construction given to it, from time to time, by this court. these rules are clearly established: First, that no lien was created by the statute: secondly, the priority established can never attach while the debtor continues the owner and in the possession of the property, although he may be unable to pay all his debts: thirdly, no evidence can be received of the insolvency of the debtor, until he has been divested of his property in one of the modes stated in the section: and, fourthly, whenever he is thus divested of his property, the person who becomes invested with the title, is thereby made a trustee for the United States, and is bound to pay their debt first out of the proceeds of the debtor's property. United States v. Fisher. 2 Cranch. 358; United States v. Hooe, 3 Cranch, 73; Prince v. Bartlett, 8 Cranch, 431; Conard v. Atlantic Insurance Company, 1 Pet. 439; Conard v. Nicoll, 4 Pet. 308; Brent v. Bank of Washington, 10 Pet. 596."

But it does not, we think, follow that the priority statute can be construed as limited to cases of technical statutory bankruptcy under the act of 1898; for when we look into the history of the Priority Act, we find that, when enacted substantially in its present form as early as 1797, there was no Bankruptcy Act. Indeed, the statute in many of its material provisions harks back to the Act of July 31, 1789, c. 5, § 21; 1 Stat. 42, passed by our very first Congress.

Now, as there were no Bankruptcy Acts at that time, we are necessitated to put some sensible construction upon the words "insolvent" and "bankruptcy" as used in this statute.

Compare United States v. Clark, Fed. Cas. No. 14,807, 1 Paine, 629, 640, where it was said by Mr. Justice Thompson:

"There is no difficulty in the construction of the act until we arrive at the last phrase 'legal bankruptcy.' What is 'legal bankruptcy'? In 1797, when the act of Congress was passed, we had no bankrupt law; and therefore these words can have no reference to bankruptcy under a bankrupt law. The words seem in their connection to have reference to the previous cases put in the section, and to point out some legal insolvency or some mode of proceeding by which the property of the debtor is taken out of his hands and to be distributed by others."

Moreover, in Prince v. Bartlett, supra (1814), relied upon by the appellee, the court said:

"At present there is no existing bankrupt law in the United States; but in many of the states provision is made by law for the relief of insolvent debtors. In the act of Congress of the 4th of August, 1790, the word 'insolvency' only is used. In the act lately passed on the same subject the words 'insolvency' and 'bankruptcy' are both adopted and appear to be used as synonymous terms. * * *

"Insolvency must be understood to mean a legal and known insolvency manifested by some notorious act of the debtor pursuant to law: not a vague allegation, which, in adjusting conflicting claims of the United States and individuals, against debtors it would be difficult to ascertain."

Certainly, when a debtor has assented to the appointment of a receiver on a bill which prays that its debts may be established and ordered to be paid out of its assets, and when, on marshaling assets and liabilities, it appears that such debtor is and was at the beginning of the proceedings hopelessly insolvent, it would seem plain that such insolvency was sufficiently notorious to bring the case within the fair meaning of the words bankruptcy and insolvency as used when the priority statute was enacted.

See, also, 1 Kent (14th Ed.) 246 et seq.; Kunzler v. Kohaus, 5 Hill, (N. Y.) 317; Sackett v. Andross, 5 Hill (N. Y.) 327; Conard v. Atlantic Insurance Co., 1 Pet. 386, 7 L. Ed. 189.

See Lewis v. United States, 92 U. S. 618, 23 L. Ed. 513. See, also, the language of Judge Wallace in United States v. Barnes (C. C.) 31 Fed. 705.

There is no doubt that the assets of this corporation, now in custodia legis, are being distributed to its creditors because it is in fact insolvent, and because the proceedings by which it was dispossessed of its property were assented to, if not indirectly invoked, by it. Of course, if it had turned out to be in fact solvent, as it was alleged to be, no question of priority would have arisen. Under such circumstances, the distinction between bankruptcy or insolvency or assignments for the benefit of creditors, on the one side, and equity receivership proceedings on the other side, is for present purposes, apparently immaterial. Generally, in such winding-up proceedings in equity, equity should follow the law. We know of no case in which the property of a debtor has been put in custodia legis, and, being insufficient to meet its debts, is being distributed under legal proceedings to its creditors, in which it has been held that the priority right as to taxes does not obtain.

See Jones v. Arena Publishing Co., 171 Mass. 22, 50 N. E. 15; Waite v. Brewery Co., 176 Mass. 283, 57 N. E. 460; Equitable Trust

Co. v. Kelsey, 209 Mass. 416, 419, 95 N. E. 850, Ann. Cas. 1912B, 750; G. L. Mass. c. 206, § 31.

In Marshall v. New York, 254 U. S. 380, 385, 41 Sup. Ct. 143, 65 L. Ed. ——, where the court was dealing with the claim of the state of New York for priority as to taxes, and where the question was as to the right of the state of New York for priority in payment out of the general assets in the hands of a receiver appointed in the federal court, the court, by Mr. Justice Brandeis, said as to such priority:

"The priority is therefore enforceable against the property in the hands of the receiver appointed by a federal court, within the state"—citing Duryea v. Woodworking Co. (C. C.) 133 Fed. 329; Conklin v. U. S. Shipbuilding Co. (C. C.) 148 Fed. 129, 130.

We cannot, therefore, accord with the District Court in holding that the United States is not entitled to priority for taxes and other claims falling plainly within the scope of R. S. § 3466, on the ground that such receivership proceedings are not bankruptcy or insolvency proceedings within the meaning of this section.

Compare Sweet v. Stores Co. (C. C. A.) 262 Fed. 727.

[3] 3. But the receiver contends that even if the freight claims are debts due the United States, and if the receivership proceedings are to be deemed bankruptcy or insolvency proceedings within the meaning of Revised Statutes, § 3466, nevertheless such claims are not debts of the United States within the fair meaning of the priority statute; that the enterprise in which the government, under its war powers, engaged in taking over and operating the railroads, was not an enterprise within the contemplation of Congress when the priority statute was enacted; that under such principles of construction as are exemplified in Trinity Church v. United States, 143 U. S. 457, 12 Sup. Ct. 511, 36 L. Ed. 226, the priority statute is not to be deemed applicable. See also Cook County Bank v. United States, 107 U. S. 445, 2 Sup. Ct. 561, 27 L. Ed. 537; Seaboard Air Line v. United States, decided June 6, 1921, 256 U. S. ——, 41 Sup. Ct. 611, 65 L. Ed. ——. This argument has weight. There is a certain obvious injustice in giving the United States when engaged in an industrial and commercial venture, even although under war powers, superior rights over other creditors bearing like relations to insolvents. Compare Gould Coupler Co. v. U. S. Shipping Board (D. C.) 261 Fed. 716. But this is for Congress; we have no remedial power.

We cannot regard ourselves at liberty to disregard the plain, inclusive language of this statute as repeatedly construed by the courts. See United States v. National Surety Co., 254 U. S. 73, 75, 41 Sup. Ct. 29, 65 L. Ed. ——, where Mr. Justice Brandeis, speaking for a unanimous court, said:

"Section 3466, embodying the common-law rule by which the sovereign has priority over other creditors of an insolvent, United States v. State Bank of North Carolina, 6 Pet. 29, 35, 8 L. Ed. 308, declares that 'the debts due to the United States shall be first satisfied.'"

In Marshall v. New York, 254 U. S. 380, at 383, 41 Sup. Ct. 143, 145, 65 L. Ed. ——, the same justice, in dealing with the prerogative right of the state of New York to sovereignty, says:

"This priority arose and exists independently of any statute. The Legislature has never, in terms, limited its scope; and the courts have rejected as unsound every contention made that some statute before them for construction had, by implication, effected a repeal or abridgment of the priority"—citing Matter of Niederstein, 154 App. Div. (N. Y.) 238, 244–246, 138 N. Y. Supp. 952; Matter of Wesley, 156 App. Div. (N. Y.) 403, 405, 141 N. Y. Supp. 1031.

In Lewis v. United States, 92 U. S. 618, 23 L. Ed. 513, the Supreme Court said concerning this statute:

"This language is general, and it is without qualification.

"The form of the indebtedness is immaterial.

"It may be by simple contract, specialty, judgment, decree, or otherwise by record. The debt may be legal or equitable, and have been incurred in this country or abroad. A valid indebtedness is as effectual in one form as another. No discrimination is made by the statute.

"The debtors may be joint or several, and principals or sureties.

"Here, again, no distinction is made by the statute. All are included. Beaston v. Bank of Delaware, 12 Pet. 134; United States v. Fisher, 2 Cranch, 358."

Compare also the language of Judge Wallace in United States v. Barnes (C. C.) 31 Fed. 705, 707, where he says:

"It is established by many adjudications, in which the meaning and effect of these provisions have been discussed, that such priority extends to all classes of debts, whether liquidated or unliquidated, joint or several, legal or equitable; and when the insolvent debtor had made a voluntary general assignment, or committed an act of bankruptcy, that such priority extends to all his estate which comes to the hands of his assignee."

This statute has never been narrowly construed. Rather the contrary. See the language of Mr. Justice Story in United States v. State Bank of North Carolina, 6 Pet. 29, 8 L. Ed. 308, where he said:

"The right of priority of payment of debts due to the government, is a prerogative of the crown well known to the common law. It is founded not so much upon any personal advantage to the sovereign; as upon motives of public policy, in order to secure an adequate revenue to sustain the public burdens, and discharge the public debts. The claim of the United States, however, does not stand upon any sovereign prerogative, but is exclusively founded upon the actual provisions of their own statutes. The same policy which governed in the case of the royal prerogative may be clearly traced in these statutes; and as that policy has mainly a reference to the public good, there is no reason for giving to them a strict and narrow interpretation. Like all other statutes of this nature, they ought to receive a fair and reasonable interpretation, according to the just import of their terms."

See, also, New Jersey v. Anderson, 203 U. S. 483, 27 Sup. Ct. 137, 51 L. Ed. 284; Richmond v. Bird, 249 U. S. 174, 39 Sup. Ct. 186, 63 L. Ed. 543; Pennsylvania Cement Co. v. Bradley Contracting Co. (D. C.) 274 Fed. 1003; In re Hibner Oil Co. (C. C. A.) 264 Fed. 667, 14 A. L. R. 629.

In the light of these authorities we must hold the statute applicable to all debts due the United States.

The decree of the District Court is reversed, with costs to the appellant, and the case is remanded to that court for further proceedings not inconsistent with this opinion.